Filed 6/20/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| SAN JOAQUIN HUMAN SERVICES AGENCY, | C076308 |
| Petitioner, | (Super. Ct. No. J06057) |
| v. |  |
| THE SUPERIOR COURT OF SAN JOAQUIN, |  |
| Respondent; |  |
| M.E. et al., |  |
| Real Parties in Interest. |  |

1

ORIGINAL PROCEEDING in mandate. Jose L. Alva, Judge. Petition granted with directions.

Danielle Ramirez, County Counsel, for Petitioner.

No appearance for Respondent.

Mussman & Mussman and Carol Mussman for Real Party in Interest M.E.

No appearance for Real Party in Interest D.F.

Petitioner San Joaquin Human Services Agency (the Agency) filed a petition for writ of mandamus and/or prohibition or other appropriate relief against the Superior Court of San Joaquin County, challenging the juvenile court's order continuing reunification services for mother M.E. (real party in interest).

On May 8, 2014, we notified the parties that we were considering issuing a peremptory writ of mandate in the first instance. Having received opposition, we have complied with the procedures required by *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171. Accordingly, we are authorized to issue a peremptory writ in the first instance. Because we conclude that the juvenile court erred in continuing mother's reunification services, we shall issue the writ.

## BACKGROUND

D.F. (minor) was born in June 2009. In July 2012, the Agency investigated a report that he was being neglected and discovered that M.E. (mother) was developmentally delayed and voluntarily receiving life skills supportive services from Valley Mountain Regional Center (VMRC). VMRC's assessment showed that mother's cognitive functioning was impaired and she was unable to care for the minor on her own. The Agency also discovered that mother was involved in a long-term incestuous relationship with her biological father, P.F. (P.F. was initially thought to be the minor's father, but instead was discovered to have encouraged mother to engage in prostitution,

2

which resulted in the minor's conception.)  Mother was dependent on P.F.'s assistance in meeting the minor's basic needs.

When P.F. was arrested, mother became increasingly agitated, making suicidal statements and repeatedly asking the social worker to take the minor.  On July 27, 2012, mother was hospitalized and the minor was taken into protective custody.

*Detention and Jurisdiction*

A Welfare and Institutions Code section 300[1] petition was filed on behalf of the minor on July 31, 2012.  He was detained the next day.

On November 30, 2012, mother submitted on the petition and the juvenile court took jurisdiction under section 300, subdivisions (b) and (g).  Mother was enrolled in a parenting class at the Women's Center of San Joaquin County and receiving weekly visitation with the minor.  The Agency had referred her to "Another Way" for an assessment with the goal of evaluating her basic daily living skills and ability to provide ongoing care to the minor, but mother had cancelled several appointments, been making up excuses, and had failed to make herself available for the assessment.

On December 10, 2012, the Agency referred mother for a psychological evaluation.  She completed her assessment with Another Way at the end of December, 2012.  The assessment recommended that mother participate in services to assist her in managing money, and a parenting class offered by Another Way.  The Agency also referred mother to therapy to increase her insight with the goal of reducing her risk for further victimization.

*January 16, 2013 Dispositional Hearing*

The juvenile court held a disposition hearing on January 16, 2013.  The recommended case plan included reunification services and required mother to submit to a psychological evaluation for the purpose of tailoring services to her specific needs.  The

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

3

recommended services included coordination with VMRC, maintenance of stable housing, personal counseling, and parenting education through a specialized provider. VMRC had assessed the minor and found him to be nonverbal and possessing a short attention span and behavior issues; the assessment put him within the autistic spectrum.

Dr. Gary Cavanaugh performed a psychological evaluation of mother in January 2013. In a report dated May 10, 2013, Cavanaugh opined that mother's mental health disabilities consisted of intellectual impairment, attention deficit hyperactivity disorder, autism spectrum disorder, and severe personality disorder. He indicated that these mental health conditions rendered her incapable of parenting the minor. He added that she was incapable of utilizing reunification services due to her denial, disorganized thinking, and difficulty focusing and understanding material, and that she would not be able to utilize reunification services within the next six months.

*July 24, 2013, Review Hearing*

At the first review hearing, held on July 24, 2013, the juvenile court ordered a second psychological evaluation and continued reunification services.[2]

Doctors Elizabeth Reichert and Tylene Cammack-Barry from UC Davis Medical Center performed a psychological evaluation of mother in September and October 2013, and generated their report on January 22, 2014. In preparing the evaluation, the doctors reviewed records including the disposition and status reports, VMRC evaluation records, the records from the parenting program, the visitation reports, and the assessment from

---

[2] The Agency requested the court order a second psychological evaluation, in light of Cavanaugh's report, and requested services be continued another six months to allow time for the evaluation to be completed. Section 361.5, subdivisions (b)(2) and (c) provide for the complete denial of reunification services where two mental health professionals agree that, even with provision of services, a parent is unlikely to be capable of adequately caring for the child within the statutory time limits--12 months in this case. (See *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 844; *Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881.)

4

Another Way. They also interviewed the Agency social worker, the VMRC case manager, two people who provided mother with independent living supportive services, mother's former therapist, and the minor's Head Start and special education teachers. They also observed interaction between mother and the minor.

The UC Davis doctors concluded that mother's cognitive deficits, limited support system, and mental health issues (including posttraumatic stress disorder and history of depression) significantly impaired her functioning to the extent that she could not safely and adequately parent the minor. Mother's inflexible thinking and limited insight made it difficult for her to understand how her behaviors impacted the minor and impacted her ability to accurately identify the minor's needs. These limitations were especially concerning considering the minor's own delays and the high level of structure, support, and attention he required. Although mother had completed her therapy and parenting classes, she was still unable to implement the strategies she had learned or identify areas of weakness in her ability to manage the minor's behaviors. Her limited awareness into her mental health issues impaired her ability to identify and respond to the minor's needs, placing him at risk of neglect. The doctors opined that mother was "not able to safely and adequately care for [the minor]" but made "recommendations for long-term services to assist [mother] in increasing her overall functioning."

In a report dated January 8, 2014, prepared for the upcoming "12-month" review hearing (§ 366.21, subd. (f)), the Agency recommended terminating mother's services, citing her "lack of capability" to parent the minor.

*March 2014 Review Hearing*

The court held a contested review hearing March 3 and 10, 2014.

Dr. Cammack-Barry testified as an expert that mother suffered from major depressive disorder, suicidal ideation, mild mental retardation, and posttraumatic stress. Mother's mental health issues impaired her ability to safely parent the minor; further, mother did not see the need to participate in therapeutic or mental health services.

5

Cammack-Barry opined that it would take *years* of treatment for mother to reunify with the minor, if at all. She explained that although she did recommend some services in her report, those services were designed to assist mother with her mental illness and improve her overall functioning, which is "not the same as saying [she] could benefit from services in a reasonable amount of time to be able to safely and adequately parent [her] child." Cammack-Barry testified that there were *no* services that would help mother to adequately parent the minor within a reasonable amount of time and that, with three to six months of general mental health therapy, followed by six to 12 months of trauma focused therapy, a year in a nurturing parent program, and nine to 12 months in parent-child interaction therapy, mother *might* be able to safely and adequately parent the minor. This would take a "few years."

No evidence was presented at the hearing that challenged, much less contradicted, Cammack-Barry's expert testimony. The Agency asked the court to terminate mother's services, arguing that there was not a substantial probability that the minor could be safely returned to mother within 18 months of the date of detention.[3] Minor's counsel agreed.

The juvenile court noted that it was "bother[ed]" that six months had elapsed from order to receipt of the second (UC Davis) psychological report. The court found that reasonable reunification services had *not* been provided, due to the delay, and ordered the Agency to provide an additional six months of services to mother of the type recommended by Cammack-Barry's report. The next review hearing was (and remains) scheduled for July 1, 2014. The Agency seeks relief from the court's ruling.[4]

---

[3] We note, although the Agency did not, that at the time the Agency made this argument, over 19 months had actually passed since the date of minor's initial detention.

[4] At the conclusion of the hearing, the court ordered the Agency "to prepare findings and orders after hearing consistent with my ruling today." As of the date of this writing, San

6

**DISCUSSION**

**I**

*Reunification Services -- Timing and Required Findings*

The manner in which the time frame for providing reunification services is calculated changes as the case progresses.

A.  *Up to 18 months*

The period for reunification services for a parent and child over the age of three when removed from parental custody is limited to 12 months from the date the child entered foster care.  (§ 361.5, subd. (a)(1)(A).)  Here, the minor here entered foster care (as defined by § 361.49) on September 26, 2012.  Accordingly, after September 26, 2013, mother was not entitled to services without specific factual findings made by the juvenile court.

In order to extend services beyond that 12 month date and *up to* 18 months from the date of initial removal, the juvenile court was required to make the specific factual findings set forth in sections 361.5 , subdivision (a)(3) and 366.21, subdivision (g)(1).

B.  *Beyond 18 Months*

At the time of the March 2014 hearing, however, the minor had been detained *over 19 months*, as his detention was properly measured--from the date that minor was taken into protective custody, July 27, 2012.  (§ 361.5, subd. (a)(4).)  Thus, the juvenile court was required to make *additional* specific factual findings in order to extend services, as we explain immediately *post*.[5]

---

Joaquin County Superior Court maintains in response to our inquiry that no written findings and orders after hearing have been entered.

[5]  This is true no matter how a review hearing is *classified*--here, the report prepared for the "12-month" review hearing was dated just short of 18 months after the minor was taken into protective custody and the hearing was held nearly 20 months after that date. Thus section 366.22, subdivision (b) applied to the hearing and required numerous specific findings to continue services.

7

The juvenile court may extend reunification services beyond 18 months from the date of initial removal, to "a maximum time period not to exceed 24 months after the date the child was originally removed from the physical custody of his or her parent . . . if it is shown . . . that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that . . . there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . within the extended time period or that reasonable services have not been provided to the parent or guardian. If the court extends the time period, the court shall specify the factual basis for its conclusion that there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . within the extended time period." (§ 361.5, subd. (a)(4).)

Prior to extending services beyond 18 months from the initial detention, the court must find that there is a substantial probability the minor will be returned and safely maintained in the home during that time or that reasonable services were not provided. (§ 366.22, subd. (b).) It must *also* determine, by clear and convincing evidence, that additional reunification services are in the minor's best interests *and* either that the parent has been making significant and consistent progress in a court-ordered residential substance abuse treatment program, or that the parent has recently been discharged from incarceration, institutionalization, or the United States Department of Homeland Security, and has been making significant progress in establishing a safe home. (*Ibid.*) Additionally, the court must find the parent: (1) regularly visited the minor; (2) has made significant and consistent progress in resolving the problems that led to removal; and (3) has completed, or demonstrated the capacity and ability to complete, the substance abuse plan as evidenced by the provider's reports, or the parent has returned from deportation, and that the parent has demonstrated the ability to and provide for the minor's safety and well-being. (§ 366.22, subd. (b)(1)-(3).)

## *Standard of Review and Analysis*

We review the juvenile court's findings for substantial evidence, and the juvenile court's decision-making process based on those findings for abuse of discretion. (See *In re William B.* (2008) 163 Cal.App.4th 1220, 1229.) Here, as we explain, the findings the court made in purported support of its decision were not supported by substantial evidence. Further, the court failed to make required findings. Nor were the facts necessary to make *any* of these required findings in evidence. Thus the court abused its discretion when it continued mother's reunification services.

As we have noted *ante*, pursuant to sections 361.5, subdivision (a)(4) and 366.22, subdivision (b), reunification services could be extended *only* if the juvenile court found a substantial probability the minor would be returned and safely maintained in the home within the extended time period. No such finding was made, and for good reason. No evidence supported that finding.

Nor does the record reveal evidence that additional reunification services were in the *minor's* best interests, nor any of the additional findings required by section 366.22, subdivision (b), in order to extend mother's services beyond 18 months. These findings were not made--nor could they be made on this record.

Although we recognize that the juvenile court did make a finding that reasonable reunification services were not provided, that finding was not supported by substantial evidence. To provide reasonable services, the Agency must identify the problems which led to the loss of custody, design services to remedy the problems, maintain reasonable contact with the parent, and make reasonable efforts to assist the parent when compliance has proved difficult. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972-973.) The question is not whether more or better services could have been provided, but "whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) A developmentally disabled parent is entitled to services

responsive to the family's special needs in light of the parent's particular disabilities, such as utilizing regional centers that are specifically designed to provide services to such individuals. (*In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1329 & fn. 8.)

The juvenile court found services were not reasonable here *not* because the services provided were not tailored to mother's special needs but because, due to the delay in obtaining the second psychological evaluation, mother was not provided the services recommended in Cammack-Barry's report. But Cammack-Barry was quite clear that mother "is not able to safely and adequately care for her child," despite the fact that she then made recommendations "for long-term services to assist [] [mother] in increasing her overall functioning." Because Cammack-Barry opined mother could not learn to parent her child safely within the permitted time period, she did *not* recommend mother receive these services (dual diagnosis therapy, psychiatric services, domestic violence support) in order to reunify with her child. Contrary to the juvenile court's characterization of these services, these were not services geared toward reunification and the Agency was under no obligation to provide them.

In any event, the juvenile court did not, and could not (on these facts) make the necessary findings to extend services beyond 18 months, regardless of whether or not reasonable services were provided. As we have discussed, the statutorily required factors were not present. Nor did any external factors prevent mother from participating in a case plan, as set forth in *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, and the cases cited therein. On this record, any extension of reunification services was an abuse of discretion.[6]

We recognize denying or terminating reunification services can be heart-wrenching. But "[i]n order to prevent children from spending their lives in the

---

[6] We note that on the record before us we see no evidence supporting an order returning the minor to mother's custody.

uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.) The statutory restrictions are consistent with the overall objective of the statutory scheme--that is, the protection of abused or neglected children and the provision of permanent, stable homes if they cannot be returned to parental custody within a reasonable time. (*Id.* at p. 307.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent superior court to (1) reverse its orders granting additional reunification services to mother, and (2) enter new orders terminating reunification services and either returning the minor to mother's custody or setting a section 366.26 hearing in accordance with section 366.22, subdivision (a). The opinion is final forthwith as to this court. (Cal. Rules of Court, rule 8.490(b)(2)(A).)


                                                      DUARTE          , J.



We concur:


      ROBIE          , Acting P. J.


      HOCH          , J.


11