Filed 1/15/16  In re Arianna T. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ARIANNA T., A Person Coming Under The Juvenile Court Law | |
| WENDY T., <br>     Petitioner, <br> v. <br> THE SUPERIOR COURT OF MARIN COUNTY, <br>     Respondent; <br> MARIN COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br>     Real Party in Interest. | A147038 <br><br> (Marin County <br> Super. Ct. No. JV25982A) |

Petitioner Wendy T. (Mother), mother of 11-year-old Arianna T., seeks review by extraordinary writ, pursuant to California Rules of Court, rule 8.452,[1] of the juvenile court's findings and orders, after the court terminated reunification services and set the matter for a permanency planning hearing, pursuant to Welfare and Institutions Code section 366.26.[2]  Mother contends that, because she made substantial progress toward reunification, the juvenile court should have extended her reunification services to the 18-month review hearing.  We shall deny the petition for extraordinary writ.

---

[1] All further rule references are to the California Rules of Court.

[2] All further statutory references are to the Welfare and Institutions Code.

1

## FACTUAL AND PROCDURAL BACKGROUND

On August 25, 2014, the Marin County Department of Health and Human Services (Department) filed an original petition alleging that Arianna came within the provisions of section 300, subdivisions (b) and (g). Specifically, as to subdivision (b), the petition alleged that, on August 22, Mother was contacted by Novato police officers due to her erratic behavior. Mother said that she was under the influence of methamphetamine; she was also in possession of methamphetamine and paraphernalia. Mother had no plan for picking up Arianna from daycare and, according to the officers, she "would be unable to parent a child as she was behaving erratically, disoriented, unable to keep her body still or answer questions in a linear fashion." The officers therefore arrested Mother on charges of child endangerment, possession of and being under the influence of a controlled substance, and violation of probation. The petition further alleged that Mother and Arianna had reportedly been homeless for the previous six weeks. As to subdivision (g), the petition alleged that Arianna had been left without any provision for support when Mother was arrested, and there were no other adults to care for her.

In the detention report, filed on August 27, 2014, the social worker reported that Arianna had been placed in a foster home. The Department had investigated Mother eight times since 2006. In 2013 an allegation of severe neglect was substantiated as a result of Mother's driving under the influence of pain medication with Arianna in the car. In 2013, Mother had declined the Department's offer of a voluntary service plan.

At the August 27, 2014 detention hearing, the juvenile court ordered Arianna detained.

In the October 2, 2014 jurisdiction report, the social worker reported that, since 1996, the Department had received 16 referrals regarding Mother, some for Arianna and some for Mother's three older children. Since 1994, Mother had had eight criminal convictions, primarily related to substance abuse.

On October 15, 2014, Mother submitted to jurisdiction.

In the November 7, 2014 disposition report, the social worker reported that Arianna, who was described as independent, intelligent, and engaging, had moved to a

2

new foster-adoption home and was adjusting well. Mother had a supervised visit with Arianna on August 29. After that visit, the social worker was unable to contact Mother to set up a visitation schedule. When the social worker learned that Mother was incarcerated, he arranged a visit at the jail, on November 11. Mother acknowledged that she needed to be sober and physically and emotionally healthy to care for Arianna. The Department recommended that Arianna remain in her foster care placement and that Mother receive reunification services.

On December 15, 2014, Mother submitted to disposition.

Six months later, on June 15, 2015, the Department filed a status review report. The social worker reported that Mother had been in a residential treatment program since April, and she reported that she had been sober since February, after several relapses since the dependency began. She was receiving comprehensive medical, mental health, and medication management. She was expected to remain in residential treatment for up to one year, to comply with her probation requirements.

Arianna had moved to a new foster-adopt placement in February, and was very happy in the home and had settled in well with the family. The social worker reported that visitation had been "difficult and sporadic for the duration of this case." Between August and December 2014, Mother had participated in only five supervised visits. After Mother entered her residential treatment program in San Francisco in April 2015, Arianna had refused to be transported to visits, stating that she wanted to have more "normal" child experiences. Mother therefore traveled to Marin County for five supervised visits, and Arianna subsequently traveled to San Francisco for four more visits. The Department recommended continued reunification services.

On July 6, 2015, the juvenile court ordered an additional six months of reunification services for Mother.

On September 21, 2015, the court appointed special advocate (CASA) submitted a report, in which she described Arianna, at 11 years old, as "energetic, competent, funny, lovable, and highly intelligent." She continued to thrive in her foster home and her

3

attachment to her foster family, particularly her foster mother, was apparent. This home was, the CASA believed, "one that uniquely suits Arianna."

The CASA wrote that Mother had been asked to leave her residential treatment program in late June because she was not complying with the rules. In late July, Mother was arrested and briefly jailed for violating the terms of her probation. As of September 8, Mother was again in jail for a probation violation and failure to appear in court. In the three months since Mother had left the program, she had participated in, at most, three visits with Arianna. The CASA believed that, "regardless of [Mother's] wish to get well and her obvious strong feelings for Arianna, [she] is simply unable to take control of her life at this time; by reason of addiction, her own difficult childhood, and other possible mental health issues." The CASA therefore recommended that reunification services be terminated and the matter be set for a section 366.26 hearing.

In a September 23, 2015 12-month review report, the social worker reported that Mother had been discharged from her residential treatment program on June 11. She had been acting in a " 'bizarre manner,' " and the staff suspecting she was using drugs. She refused to take a drug test and then completely stopped following program rules. She was therefore asked to leave the program. On June 24, Mother had entered a 30-day detoxification program, which was mandated by the terms of her probation. After leaving that program, Mother stayed at a homeless shelter, with friends in a motel, and in a tent with her new boyfriend. She told the social worker that she had only experienced two relapses over the last several months. Mother was arrested in July, after being found to be under the influence, and was again arrested in early September, after failing to appear in court regarding the previous arrest. She remained in jail at the time of the report.

Regarding visitation, the social worker reported that, between June and September 2015, Mother had participated in only one visit and had missed 11 visits. She had indicated that she did not want Arianna to know that she was again in jail, and did not want Arianna to visit until she knew the length of her current sentence. Arianna

4

continued to thrive in her foster-adopt home, and had "reportedly asked her foster parents when the court case will be 'over' and when she can be adopted[.]"

The social worker concluded that Mother "is in no way prepared to take custody of Arianna after a year of Family Reunification Services." The Department therefore recommended that the court terminate reunification services and set a section 366.26 hearing.

At the October 5, 2015 12-month review hearing, Mother's counsel stated that Mother had just been released from custody and had entered a new residential treatment program. Counsel also requested that a contested hearing be held.

On October 16, 2015, the day scheduled for the contested hearing, Mother's counsel asked the court for a continuance so that Mother could collect needed documentary evidence. The Department did not oppose the request, and it was agreed that Mother would provide the Department with any documentary evidence by November 6, the Friday before the Monday hearing. The court granted the request for a continuance.

At the November 9, 2015 contested 12-month review hearing, Mother did not appear, but her counsel made a statement on her behalf.[3] Mother's counsel also requested that several documents be admitted into evidence, including an October 8 letter from Mother's current residential treatment program, a letter from her doctor, and two drug test results from 2015. The Department and Arianna's counsel objected to admission of the documents, and the court found that they were ex parte communications and had not been submitted in a timely manner. The court therefore refused to admit the documents into evidence. It then took the matter under submission.

On November 16, 2015, the court terminated reunification services and set the matter for a March 14, 2016 permanency planning hearing, pursuant to section 366.26. The court explained that reasonable services had been provided to Mother, "though she did not make use of some of those services. [¶] She has not been able to participate

---

[3] The reporter's transcript from that hearing is not part of the record on appeal.

5

regularly and to sustain substantial progress in her various treatment programs. Starting June 2015 through September 2015, 12 visits with Arianna were calendared and organized for her, but she appeared for one of those visits. She was arrested in July 2015 and in September 2015 for probation violations. These are some of the disruptions that have occurred over the past several months . . . .

"The court—in reading the reports and in listening to arguments, [Mother] clearly, from my perspective, clearly has insight that Arianna needs stability, yet in the actual day-to-day, month-to-month work by [Mother], she has not established stability for herself.

"The court finds by a preponderance of the evidence that returning Arianna to [Mother] at this time would create a substantial risk of detriment to Arianna's safety, protection, her well-being, and the court does terminate the reunification services."

On December 18, 2015, Mother filed this petition for extraordinary writ seeking review of the juvenile court's order.[4]

## DISCUSSION

### I. *Adequacy of the Writ Petition*

As a preliminary matter, the Department asks that we summarily deny Mother's petition on the ground that it is procedurally inadequate.

In enacting section 366.26, the Legislature "sought to achieve substantive as well as expeditious review of the trial court's order[]" in cases such as the present one. (*In re Glen C.* (2000) 78 Cal.App.4th 570, 581 (*Glen C.*); see § 366.26, subd. (l)(4)(A) & (B) [intent of this subdivision is to "[m]ake every reasonable attempt to achieve a substantive and meritorious review by the appellate court" and to "[e]ncourage the appellate court to determine all writ petitions . . . on their merits"].) A writ petition challenging an order setting a section 366.26 hearing must nonetheless comply with the requirements set forth in rule 8.452. A petition is therefore required to include a "summary of the grounds of

---

[4] On December 22, 2015, we denied Mother's request for a temporary stay of the juvenile court proceedings, pending determination of this petition.

6

the petition." (Rule 8.452(a)(1)(D).) It must also be accompanied by a memorandum that includes (1) "a summary of the significant facts" (rule 8.452(b)(1)), (2) a statement of "each point under a separate heading or subheading summarizing the point and support[ing] each point by argument and citation of authority" (rule 8.452,(b)(2)), and (3) support for "any reference to a matter in the record by a citation to the record . . . ." (Rule 8.452(b)(3).)

In short, while a writ petition is to be "liberally construed" (rule 8.452(a)(1)), "the points and authorities must, at a minimum, adequately inform the court of the issues presented, point out the factual support for them in the record, and offer argument and authorities that will assist the court in resolving the contested issues." (*Glen C.*, *supra*, 78 Cal.App.4th at p. 583.) In *Glen C.*, "[i]n order to press upon counsel the importance of adequate presentation of writ petitions that are filed," a panel of this Division "announce[d] our general intention to, in the future, summarily deny petitions that fail to comply with the requirements of section 366.26 and [former] rule 39.1B," now rule 8.452. (*Glen C.*, at p. 584.)

In this case, Mother's petition was not accompanied by a memorandum of points and authorities. Instead, it included a half-page "Attachment," which requested that the juvenile court's order setting the 366.26 hearing be vacated and that further family reunification services be offered, but provided only the following three sentences of argument: "[T]he juvenile court should have considered the documents which [Mother] requested be entered into evidence. If [Mother's] documents had been admitted and considered, the juvenile court would have been able to see that she had drug tested clean, and had been successfully participating in an inpatient drug treatment program since October 5, 2015. [¶] Further, [Mother] contend[s] that she did meet her burden to show that the requirements Welfare and Institutions Code section 366.21, subdivision (g) had been met, and that she was therefore entitled to an additional six months of family reunification services."

Mother's petition plainly did not comply with the requirements of rule 8.452 in that it did not include a memorandum containing a summary of significant facts, citation

7

to the record, or argument and citation to authority supporting the points raised. (Rule 8.452(b)(1)-(b)(3).) Nevertheless, because the "Attachment" did minimally apprise us of the nature of Mother's argument and, in light of the mandate to liberally construe juvenile writ petitions (rule 8.452(a)(1)), we will exercise our discretion and reach the merits. (Compare *Glen C.*, *supra*, 78 Cal.App.4th at p. 578 [petition stated on its face only that petitioner " 'attended the [T.A.L.K.] program but had no child visitation' and that [he] had 'perfect attendance' at that program and was 'attempting to do everything he could to prepare to be a father to his children' "].)[5]

## II. *Termination of Reunification Services*

Mother contends that, because she made substantial progress toward reunification, the juvenile court improperly failed to extend her reunification services to the 18-month review hearing. In particular, she argues that the court should have considered certain documents, which would have shown that she had tested clean for drugs and had been successfully participating in a drug treatment program.

Section 361.5, which governs the provision of reunification services, provides, inter alia: "Except as otherwise provided in subparagraph (C), for a child who, on the date of initial removal from the physical custody of his or her parent or guardian, was three years of age or older, court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as provided in Section 361.49, unless the child is returned to the home of the parent or guardian." (§ 361.5, subdivision (a)(1)(A).) Subdivision (a)(3) of that section further

---

[5] We must, however, admonish Mother's counsel that any subsequent failure to comply with the requirements of rule 8.452 will likely result in a summary denial of the petition, as well as other "appropriate steps (e.g., report[ing] the conduct to the trial court or State Bar or initiat[ing] sanction proceedings if appropriate) to deter repeated violations." (*Glen C.*, *supra*, 78 Cal.App.4th at p. 584.) We also remind counsel, as we stated in *Glen C.*, that, "when an attorney evaluates a case and determines there is no potentially meritorious issue to be raised, a petition for extraordinary writ simply should not be filed. [Citation.]" (*Ibid.* [filing a petition that "attorney does not believe to be 'legal or just' would violate the attorney's professional obligation and would be frivolous"].)

provides that "court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian if it can be shown . . . that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period. The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian. . . . The court shall also consider, among other factors, good faith efforts that the parent or guardian has made to maintain contact with the child." (§§ 361.5, subd. (a)(3); accord, 366.21, subd. (g).)

"[T]o find a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, the court shall be required to find all of the following:

"(A) That the parent or legal guardian has consistently and regularly contacted and visited with the child.

"(B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home.

"(C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs." (§ 366.21, subd. (g)(1); accord, rule 5.715(b)(4)(A)(i).)

"We review the juvenile court's findings for substantial evidence, and the juvenile court's decisionmaking process based on those findings for abuse of discretion. [Citation.]" (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223 (*San Joaquin Human Services Agency*).)

In the present case, Mother asserts that, had the juvenile court considered the documents it refused to admit into evidence at the contested 12-month review hearing, she would have satisfied her burden to show that she had satisfied the requirements set forth in subdivision (g) of section 366.21, entitling her to an additional six months of

9

reunification services. We conclude that, even had the court ignored the untimeliness of counsel's presentation of the documents in question, its consideration of those documents would not have changed the result in this case.

First, the record shows that, by the time of the 12-month review hearing, Mother had not consistently or regularly visited with Arianna. (See § 366.21, subd, (g)(1)(A).) Between June and September 2015, Mother had participated in only one of twelve scheduled visits.[6] This failure to participate in visitation provided an independent basis for terminating reunification services and setting the section 366.26 hearing. (See § 366.21, subd. (e)(5); *S.W. v. Superior Court* (2009) 174 Cal.App.4th 277, 283.)

In addition, the record shows that Mother had neither made significant progress in resolving the problems that led to the removal of Arianna (see § 366.21, subd. (g)(1)(B)), nor demonstrated the capacity or ability to complete the objectives of her treatment plan or provide for Arianna's safety. (See § 366.21, subd. (g)(1)(C).) The court's consideration of the rejected documents, which presumably demonstrated that Mother had complied with the requirements of her new treatment program for the month during which she had participated in it, would not have warranted a six-month extension of the reunification period under section 366.21, subdivision (g), which allows the juvenile court to extend reunification services only if it finds that there is "a substantial probability that the child will be returned to the physical custody of his or her parent . . . and safely maintained in the home within the extended period of time . . . ."

Mother did not participate in her case plan for the first five months of the dependency and, once she did start participating, she was dismissed from a residential treatment program after two months, in June 2015. Thereafter, she repeatedly relapsed in her use of drugs and was arrested for drug-related violations of probation. As the juvenile court found when it terminated reunification services, Mother "has insight that

---

[6] We observe that these missed visits were not due to Mother's incarceration, although, once she was taken into custody on September 8, 2015, Mother requested that Arianna not visit her at the jail until she learned more about the length of her incarceration.

10

Arianna needs stability, yet in the actual day-to-day, month-to-month work by [Mother], she has not established stability for herself." At this stage of the proceedings, "to warrant extension of the time [Arianna] must wait for stability and permanency beyond the . . . 12-month target date[], there must exist more than just mere hope additional services will facilitate reunification." (*A.H. v. Superior Court* (2010) 182 Cal.App.4th 1050, 1060.) Substantial evidence supports the juvenile court's finding that Mother's progress was insufficient to demonstrate a substantial probability that Arianna would be safely returned to her physical custody within the six-month period. (See §§ 366.21, subd. (g); accord, 361.5, subd. (a)(3); see *San Joaquin Human Services Agency*, *supra*, 227 Cal.App.4th at p. 223.)

Accordingly, regardless of its failure to review the documents proffered by Mother's counsel, the juvenile court did not abuse its discretion when it terminated Mother's reunification services and set the matter for a section 366.26 hearing. (See *San Joaquin Human Services Agency*, *supra*, 227 Cal.App.4th at p. 223.)

## DISPOSITION

The petition for extraordinary writ is denied on the merits. Our decision is final as to this court immediately. (Rule 8.490(b)(2)(A).)

_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Miller, J.

11