Filed 6/26/23  In re C.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re C.A., a Person Coming Under the Juvenile Court Law. | C096765 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53005082) |
| Plaintiff and Respondent, | |
| v. | |
| C.A., | |
| Defendant and Appellant. | |

C.A. (father), who appears before us pro se, appeals from orders terminating his parental rights to minor C.A. (minor) under Welfare and Institutions Code section 366.26[1] and denying his section 388 petition.  Father argues these orders were erroneous

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

Mother is not a party to this appeal.

1

because (1) the juvenile court improperly failed to find that the beneficial parental relationship exception applied, and (2) the juvenile court incorrectly believed the time for reunification services had expired. Father also argues that (1) his due process rights were violated when the social worker sent documents late and to the wrong address; (2) his request for a bonding study was improperly ignored; and (3) the social worker did not consider certain evidence at the beginning of the case. We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2020, minor was detained after minor and mother both tested positive for amphetamines at the time of minor's birth. Mother subsequently admitted using methamphetamine every few days for approximately 17 years. Father denied knowing about mother's substance abuse and claimed he did not abuse any substances or alcohol.

Minor was initially placed with father but then removed four days later because father (1) failed to comply with the agreed-upon safety plan, and (2) tested positive for amphetamines and methamphetamines.

That same month, the Placer County Department of Health and Human Services (Department) filed a section 300 petition naming the minor and based on his parents' neglect. (§ 300, subd. (b)(1).) The juvenile court ordered the minor detained and subsequently sustained the uncontested petition. The court ordered twice-weekly supervised visitation with the parents.

During the August 2020 jurisdiction/disposition hearing, the juvenile court adjudged minor to be a dependent of the court and ordered reunification services for parents. The court continued twice-weekly supervised visitation for the parents with minor.

Reports from November 2020, February 2021, and July 2021 noted father was engaging with services but struggled with sobriety. During this period, father visited regularly with minor, and his visits were appropriate.

During the 12-month review hearing in August 2021, the juvenile court continued services for mother and supervised visitation for both parents. However, the court terminated father's services, finding (1) father had not complied with the reunification plan, and (2) there was not a substantial probability that minor would be returned to father's physical custody within the requisite timeframe.

The 18-month status report in December 2021 recommended minor be returned to mother's care. Mother had multiple successful overnight visits with minor, and the two had bonded. Meanwhile, father continued to have weekly supervised visits with minor. The visits went well, and minor appeared bonded with father. The court returned minor to mother with family maintenance services and continued supervised visits for father.

In January 2022, the Department filed a section 387 supplemental petition. Mother and her adult daughter had an argument, and the adult daughter called police and father because mother was so intoxicated that she was unable to care for minor. Father took minor and left, even though the court had only ordered supervised visitation. Father ignored repeated calls from police and eventually returned minor to mother's home the following morning. The court ordered minor detained, and he was returned to his previous caregivers. The court ordered supervised once-a-week visitation for parents.

The February 2022 jurisdiction/disposition report recommended terminating services for mother and setting a section 366.26 hearing. Minor's caregivers reported that when minor was returned to them in January 2022, minor was having nightmares and was fearful of baths. He had also become clingy. The caregivers expressed interest in adopting minor. Father said he had been sober since September 2021 and was participating in substance abuse services. He said he and minor had "a very special bond, [minor] gets so upset when I leave and it kills me and hurts my heart." The report noted minor was struggling with the transitions to and from his visits with parents.

The report attached notes regarding the visits between minor and father. Father appeared engaged with minor during some of the visits, although he repeatedly offered

3

minor his phone to watch videos, explaining he thought minor was "tired." But, he often failed to check minor's diaper, appearing to the social worker that father was not paying attention to minor.

During the February 2022 jurisdiction/disposition hearing, mother and father each submitted on the section 387 petition. The juvenile court sustained the petition, terminated mother's family maintenance services, and set a section 366.26 hearing. The court also ordered twice-monthly supervised visitation for parents.

A.     *Section 388 petition*

In May 2022, father filed a section 388 petition asking the court to reinstate reunification services. Father argued he was sober, employed, and living in stable housing with his girlfriend. He further argued he had continued visiting with minor regularly and was bonded with minor.[2]

B.     *Section 366.26 report and hearing*

The June 2022 section 366.26 report recommended terminating parental rights and freeing the minor for adoption by the current caregivers, who had cared for him since June 2020 (except for the brief period minor was returned to mother from Dec. 2021 through Jan. 2022). Minor was comfortable with his caregivers and looked to them to meet his daily physical and emotional needs. Minor, who was only 23 months old, had been out of his mother's care for 22 months, and had only spent a few days in his father's care. During minor's twice-monthly supervised visits with parents, mother and father would sometimes bring snacks and toys, but they never brought essential items such as diapers. Minor continued to struggle with the transitions to and from the visits. And, although he called his caregivers mother and father, he did not refer to parents by those names. Minor showed affection toward parents, but he was a generally affectionate child

---

[2]     Mother also filed a section 388 petition asking for the return of her son. That petition is not at issue in this appeal.

4

with everyone in his life. In addition, although minor responded positively to his parents during visits, he responded similarly to strangers, and he never asked for mother or father or showed excitement when he saw them during visits. Minor did not know any home other than the home of his caregivers, and he was clingy with caregivers when he was returned to them in January 2022. In sum, minor needed the security and permanency of adoption, and he would not suffer from losing his limited relationship with his parents.

During the July 2022 section 366.26 hearing, father testified he had regularly used methamphetamine for about six years but had been sober since September 2021. He had attended 90 Alcoholics Anonymous meetings in 92 days at the start of his sobriety, and he now had a sponsor and attended meetings twice a month. He did not have any proof of attending the meetings. He testified that the night in January 2022 when mother was intoxicated, he took minor to his girlfriend's house to keep minor safe and avoid respite care that night. He had missed the calls from police that evening because his phone had died. Minor had been clingy with him that night. Father was now living with his girlfriend and worked as a general contractor.

Father testified his visits with minor were "amazing." Minor was always excited to see him at the start of visits. The two played together, read books, watched videos, and practiced counting, and father changed minor's diaper when necessary. Although he could not bring essential things like diapers to the initial meetings due to COVID-19, father did so when the rules changed. Father once tried to discipline minor when minor grabbed a remote control. Father testified minor would get upset and cry when father left, sometimes grabbing father's leg. Ending visits had gotten easier recently because father signaled the end of visits by cleaning up. Minor called father "dada" and "daddy shark." Father asked the court to extend his reunification services or return minor to him.

A social worker who had observed minor since the start of the case testified minor was very bonded with his caregivers. He called them "momma" and "dadda" and was very affectionate with them. She also testified that although father had recently become

5

more engaged during his visits with minor, some of his prior visits were less successful. During one of the visits she observed, father just sat nearby in complete silence for nearly 30 minutes, not interacting with minor, who was playing with the window blinds with his back to father. During another visit, father failed to notice for over 20 minutes that minor had a dirty diaper that needed changing. The social worker testified that there was only one visitation note stating that minor referred to father as "dadda," and she opined minor may have used this word because both father and the visitation monitor referred to father by that name. In her opinion, minor viewed father as a friendly visitor and did not engage with father. Although initially minor had some difficulty leaving father at the end of visits, these issues resolved once minor became more comfortable at the visitation center.

In August 2022, the court denied father's section 388 petition, reasoning that father had failed to show that circumstances in his life had changed so permanently as to justify reinstatement of services, and that to do so would not be in minor's best interest. The court did not find father's testimony regarding his current sobriety credible, especially since father had previously been dishonest about his sobriety, even when confronted with positive drug tests.

With respect to terminating parental rights, the court reviewed the necessary considerations with respect to application of the beneficial parental relationship exception. The court found both parents had maintained regular visitation and had a beneficial relationship with minor. As such, the issue was whether the parents had established that terminating the relationship would "cause [minor] such detriment that it would override the compelling need for stability of a permanent home with an adoptive family." The court noted the social worker's testimony that minor had formed a strong bond with his caregivers. Although parents loved minor, he had lived (and thrived) with his caregivers for his entire life, except for a short time he was away from their care. Parents also had failed to present evidence that established "that the relationship with

6

either parent so promotes [minor's] well being to such a degree that it outweighs the stability and well being that he would gain in a permanent home." Finding that the beneficial parental relationship exception did not apply, the court terminated parents' parental rights and freed minor for adoption.

DISCUSSION

I

Father contends the juvenile court erred in denying his section 388 petition. Although father does not fully develop this argument, or provide citations to the record, he contends that the court erroneously believed that time had run out for additional reunification services. We disagree.

At the time of July 2022 hearing, the minor had been detained for over 24 months, as properly measured from the date he was taken into protective custody in June 2020. Section 361.5 makes clear that the maximum time period for reunification services is not to exceed 18 months from the initial detention, unless the permanent plan for the minor is to return and safely maintain the minor in the home within the extended time period, and the court finds a substantial probability that the minor will be returned to the physical custody of his or her parent within the extended timeframe. (§ 361.5, subd. (a)(3), (4); *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 222-223.) The court neither made such findings nor adopted a permanent plan of returning minor to parents prior to the expiration of the 18-month period. As such, the court did not err in denying father's section 388 petition.

II

Father next argues that the juvenile court erred in finding the beneficial parental relationship exception did not apply. Here, father contends the social worker was biased against him and overly focused on the strong bond minor had formed with his caregivers. He argues the evidence showed he had a strong bond with minor, and disputes the accuracy of the Department's reports. Acknowledging that father maintained consistent

7

visitation with minor, the Department argues the trial court did not err because father has failed to establish (1) a significant, positive, emotional attachment with minor, or (2) that the harm minor would experience if the parental relationship were terminated is outweighed by the benefit provided by an adoptive home. We find no merit to father's arguments.

A. *Applicable law*

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . The permanent plan preferred by the Legislature is adoption. [Citation.]' [Citations.] If the court finds the child is adoptable, it must terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A*. (1996) 44 Cal.App.4th 1352, 1368, italics omitted.) There are only limited circumstances permitting the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) Such circumstances include when the parents have maintained regular visitation and contact with the child, the child would benefit from continuing the relationship, and termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *In re Caden C*. (2021) 11 Cal.5th 614, 639-640 (*Caden C*.).)

For the beneficial parental relationship exception to apply, the parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C., supra*, 11 Cal.5th at p. 636.)

8

The beneficial parental relationship exception to adoption "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.) The factual predicate of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640; *In re K.P*. (2012) 203 Cal.App.4th 614, 622.)

B.      *Analysis*

The record demonstrates minor enjoyed his visits with father, and they were somewhat bonded. The minor was only a few days old when he was removed from parents' care, and he had lived with the same caregivers for almost his entire life, except for about a month that he spent with mother and a few days with father. Although their visits mostly went well, father often played videos during their limited times together, and he regularly failed to check minor's diaper. While minor was affectionate with father, he also was friendly and affectionate with almost everyone in his life. As the social worker testified, minor only viewed father as a friendly visitor. (See *Caden C., supra*, 11 Cal.5th at p. 632 [whether minor has a substantial, positive, emotional attachment to a parent involves numerous factors, such as the child's age, the portion of the child's life spent in the parent's custody, the positive or negative effect of interaction between parent and child, the child's specific needs, and how the child feels about and interacts with, looks to, or talks to the parent].)

Given this limited bond between minor and father, it was reasonable for the court to conclude that terminating minor's relationship with father would not be detrimental when balanced against the countervailing benefit of a new, adoptive home. Although father testified minor was sometimes sad at the end of their visits, the social worker

9

testified this had not been an issue once minor had become comfortable at the visitation center. The Department noted in its report that minor did not seem excited to see his parents during visits, and he never asked for them. In contrast, he was clingy with his caregivers when he was returned to them in January 2022 after his brief stay with mother. As the Department opined, minor would benefit from a sense of stability, and this benefit is not outweighed by the harm he would suffer from losing his relationship with his parents. Under the circumstances, the court did not abuse its discretion in finding that father had failed to establish the beneficial parent relationship exception to adoption. (See *Caden C., supra*, 11 Cal.5th at pp. 639-640.)

III

Father makes several additional claims, including that (1) his due process rights were violated when the social worker sent documents late and to the wrong address; (2) the father requested a bonding study but there was no follow-up; and (3) the social worker did not consider certain evidence at the beginning of the case. As a preliminary matter, we note that father has only appealed from the juvenile court's orders denying his section 388 petition and terminating parental rights pursuant to section 366.26. With respect to the bonding study, father has not demonstrated that he made this request to the court, and we therefore cannot address it on appeal. (See *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115-1116 [failure to cite to supporting evidence forfeits claim on appeal].) In addition, to the extent the social worker did not consider certain evidence at the beginning of the case, we note that the juvenile court considered the entire case file in making its orders, including testimony from father and other supporting witnesses. (See *Caden C., supra*, 11 Cal.5th at pp. 639-640 [the juvenile court exercises its discretion in weighing the evidence].) Finally, we note that father failed to specifically identify which documents were late or sent to the wrong address. Father does not point to any instance where he missed a court hearing, or that he otherwise suffered prejudice as a result of any purportedly late document, especially since he was

10

represented by counsel throughout the proceedings in the juvenile court.  (See *Guthrey, supra*, at pp. 1115-1116 [an appellate court is not required to search the record to ascertain whether it contains support for an appellant's contentions].)  Under the circumstances, we must find that father's additional claims are without merit.

DISPOSITION

The juvenile court's orders are affirmed.


      KRAUSE      , J.


We concur:


      MAURO      , Acting P. J.


      MESIWALA      , J.