Filed 2/2/26  C.T. v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| C.T.,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>      Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN & FAMILY SERVICES BUREAU et al.,<br><br>      Real Parties in Interest. | A174722<br><br>(Contra Costa County Super. Ct. Nos. J24-00697, J24-00698, J24-00699) |

Petitioner C.T. (mother) seeks extraordinary writ review (Cal. Rules of Court, rule 8.452) of a juvenile court order setting a permanency planning hearing under Welfare and Institutions Code section 366.26 in regard to her children, A.M., C.M., and E.M. (minors).[1]  Mother contends the court erred in terminating reunification services at the six-month review hearing after finding that mother failed to participate regularly and make substantive progress in court-ordered services.  We disagree and deny mother's petition.

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code, and all rule references are to the California Rules of Court.

1

# I. BACKGROUND

A. <u>Detention/Jurisdiction/Disposition Proceedings</u>

On December 9, 2024, Contra Costa County Children and Family Services Bureau (Bureau) filed juvenile dependency petitions under section 300 on behalf of then five-year-old A.M., three-year-old C.M., and one-year-old E.M. The petitions alleged that several days earlier, mother hit A.M. and caused a large bruise to her left cheekbone, which resulted in mother's arrest. All three children were also "found dirty and hungry, and without supervision in the parent's truck." A.M. was underweight for her age. C.M. and E.M. had severe diaper rashes that needed medical attention, and E.M.'s rash was so severe that it "formed blisters and was raw in areas." The petitions further alleged that mother "has a serious and chronic substance abuse disorder," a history of substance abuse related crimes, "engages in domestic violence" with minors' father, J.M. (father), and has untreated mental health issues. The petitions noted that father also has a history of substance abuse related crimes.

In its detention report, the Bureau stated that the social worker attempted to contact mother several times but she was uncooperative and blocked the social worker's phone number. The social worker met with father at his workplace in November 2024. Father explained that mother was planning to move to Tennessee with minors to be closer to their maternal grandmother. He continued that the family was currently homeless but that he or mother sometimes booked a hotel room. Father had no concerns about minors being in mother's care. The next month, the social worker spoke with mother after she was arrested for hitting A.M. Mother explained that she "accidently elbowed [A.M.] when she was trying to make her bed." Mother admitted that A.M. and C.M. had witnessed some incidents of domestic

2

violence between her and father before and that she planned to "enter rehab" because she had relapsed on "one line of methamphetamine." At the time of her arrest, three hypodermic needles were found in mother's purse. She claimed she found these while packing and was planning to throw them away. The report also noted that in 2017, mother's older child, W.G., tested positive for methamphetamine when he was born and was removed from mother's care.[2]

At the detention hearing, mother and father entered general denials but submitted on the issue of detention. The juvenile court issued detention orders that removed minors from mother and father. The court ordered that drug testing, substance abuse treatment, and parenting education be provided to both parents.

In March 2025, mother and father filed waivers of rights and pled no contest to the allegations in the amended petitions. At the jurisdiction hearing, the juvenile court found a factual basis for the pleas and sustained the amended petitions. As part of her plea, mother agreed to drug testing and to attend a weekly 12-step substance abuse program. The court emphasized that a missed drug test would count as a positive test.

In its April 2025 disposition report, the Bureau recommended that the juvenile court declare minors dependents of the court and order reunification services to mother and father. The report included a summary of numerous past referrals that alleged neglect and abuse of minors as well as mother's three other children. The report also detailed mother's criminal history, which spanned from 2003 to 2017. As for court-ordered services, mother reported that she did not qualify for a substance abuse treatment program

---

[2] Mother's parental rights were terminated as to W.G. in 2018.

but had connected with a sobriety coach.  Mother also reported that she was attending 12-step program meetings but failed to provide the social worker with written attendance verification.  Mother enrolled in a domestic violence and anger management program but had only attended two classes to date.  As for random drug testing, mother tested negative 11 times but was a no-show eight times.  Father participated minimally in case activities.  As for supervised visits, the report stated that although mother never arrived on time, she was attentive and patient with minors and "engage[d] in age-appropriate play" with them.

At the disposition hearing, the juvenile court adopted the Bureau's recommendations and declared minors dependents of the court.  The court expressed concern over mother's missed drug tests and highlighted that the parents only had a limited six-month period of reunification services based on the fact that E.M. was under the age of three.

B.  Six-Month Review Hearing

In its six-month status review report, the Bureau recommended terminating mother's and father's reunification services and setting a section 366.26 hearing to determine a permanent plan for minors.  The report noted a recent incident during a supervised visit when mother became "verbally aggressive towards the monitoring social casework assistant [(SCA)] in front of [minors]."  Mother had started individual therapy in January 2025 but had missed five sessions.  Mother's therapist informed the social worker that mother "was doing well getting emotional support and resources from the community."  The therapist, however, "was surprised to know [mother] has not been participating in her case plan services because she was told differently by [mother]."  Mother continued to attend the domestic violence and anger management program.  Although she missed several sessions, she

4

was "engaged and participate[d] in the sessions" when she did attend.

The report continued that mother did not start her parenting classes and still failed to provide the social worker with written verification that she was attending the 12-step program. Mother claimed that she was attending the program but "lost her storage space where the documents were stored." Mother tested negative for drugs 20 times during this reporting period but missed eight tests. Mother was granted two visits per week with minors but missed at least 10 of these visits. During the visits she did attend, it was reported that mother was unable to manage minors and became frustrated with them. Mother also cursed and yelled at the SCA in front of minors. Mother initially attempted to justify her actions but later admitted that she had trouble managing her anger.

On October 23 and 28, 2025, the juvenile court held a contested six-month review hearing. Father did not appear. The court ordered mother to drug test before calling the matter, and mother tested positive for methamphetamine. Mother claimed that the result was faulty and the court responded that it was important for mother to test at the facilities as "[c]ourt tests are not maintained." The social worker testified about mother's negative behavior during her visits with minors, as detailed in the reports. During one visit, the SCA had told mother that she should not have contact with the minors' caregiver. In response, mother raised her voice, went to the bathroom, and began slamming things before coming out to play with minors. The social worker noted that minors interacted well with mother when she was not agitated and that she "could be very loving and very caring towards" them. As for mother's eight missed drug tests, the social worker testified that mother only notified her once that she had missed a test.

Mother testified that minors were initially detained because she was

homeless and because of a prior incident of domestic violence with father when she was pregnant with E.M. She otherwise denied that there were any failures on her part that resulted in the Bureau's involvement and alluded to "false reports" made by father's coworkers. Mother explained that she was attending domestic violence and anger management classes and learned a lot about how to cope with her anger. Mother currently resided in a church and performed groundskeeping services in exchange for housing. She testified that she only started parenting classes two weeks ago because she previously thought she needed a referral before she could register for classes. When asked about her recent missed drug tests, mother explained that she had missed one because her phone was turned off for two days and had missed another because she went to the wrong testing facility.

At the conclusion of the hearing, the juvenile court explained that it did not find mother's testimony credible and observed that she was "in complete denial" of her own behavior and mistakes. The court continued that it found mother emotionally and physically abusive and would consider all of her missed drug tests as positive tests. The court concluded that there was a "substantial risk of detriment to the safety, protection, physical and emotional well-being of [minors]" and that "by clear and convincing evidence," mother "has failed to participate in court ordered services and make substantive progress." It also found that there was no "substantial probability of [minors'] return [to mother] within six months." The court then scheduled a section 366.26 hearing for February 19, 2026.

Mother filed a petition under rule 8.452, challenging the juvenile court's October 2025 order and requesting a stay of the section 366.26 hearing. We issued an order to show cause why the petition should not be granted, and the Bureau filed an opposition.

6

## II. **DISCUSSION**

### A. Law and Standard of Review

"Section 361.5, subdivision (a), sets forth various 'time limitations' on reunification services depending on the child's age." (*B.D. v. Superior Court* (2025) 110 Cal.App.5th 1132, 1150 (*B.D.*).)  For children over the age of three on the date of the initial removal, the presumptive period of services is 12 months, with a maximum of 18 months.  (§ 361.5, subd. (a)(1)(A), (3)(A).)  For children under the age of three, "services shall be provided for a period of 6 months from the dispositional hearing . . ., but no longer than 12 months from the date the child entered foster care."  (§ 361.5, subd. (a)(1)(B).)  And as relevant here, where there is a "sibling group" in which one of the members was under the age of three at the time of removal, "the presumptive period of reunification services . . . is [also] six months from the date of the dispositional hearing."[3]  (*B.D.*, at p. 1151; see § 361.5, subd. (a)(1)(C).)

In cases with a sibling group that includes a child under the age of three, the juvenile court *may,* at the six-month review hearing, schedule a section 366.26 hearing if it "finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan."  (§ 366.21, subd. (e)(3).)  "If, however, the court finds there is a substantial probability that the child . . . may be returned to their parent . . . within 6 months . . ., the court shall continue the case to the 12-month permanency hearing."  (*Ibid.*)

"We review the juvenile court's findings for substantial evidence, and the juvenile court's decisionmaking process based on those findings for abuse of discretion."  (*San Joaquin Human Services Agency v. Superior Court* (2014)

---

[3] A "sibling group" means "two or more children who are related to each other as full or half siblings."  (§ 361.5, subd. (a)(1)(C).)

227 Cal.App.4th 215, 223.) "[W]hen reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.) We review the record in the light most favorable to the prevailing party. (*Id.* at p. 996.)

B. Analysis

Mother contends that the juvenile court erred in setting a section 366.26 hearing and terminating her reunification services because she had made progress in her court-ordered treatment plan. She further argues that given her progress, there is a substantial probability that minors will be returned to her in six months. We find no error in the court's findings and termination of mother's reunification services.

1. *Regular Participation and Substantive Progress*

Substantial evidence supports the juvenile court's finding that mother failed to participate regularly and make substantive progress in her court-ordered services. Mother's case plan required that she attend a 52-week domestic violence class, not use any illegal substances, submit to random drug testing for six months, complete a psychiatric evaluation as well as a parenting education program, participate in individual and family therapy, and attend a weekly 12-step program. Mother contends that she "made the progress she could, given her dire situation." Even if this is true, it does not negate the fact that she failed to participate *regularly* in these services during the reporting period.

At the time of the six-month review, mother did complete a psychiatric evaluation. But she did not provide the results to the social worker until

8

several months later in August 2025.  She also attended individual therapy but missed five sessions.  Mother did not start family therapy because she did not meet with minors' therapist as required.  She also did not complete the parenting program and only started the program a week before the six-month review hearing.  Mother attended the domestic violence and anger management program but missed at least nine classes.  She was engaged in the classes she did attend but continued to be verbally aggressive towards the social worker, the SCA, and the caregiver.  The program director noted that mother was "not utilizing the coping skills that the program teaches."

Although mother tested negative for drugs 20 times, she missed eight tests, which the juvenile court considered to be positive tests.  More concerning, she tested positive for methamphetamine on the day of the six-month review hearing.  Finally, although mother maintained that she was attending the 12-step program, she claimed she was unable to provide verification of her attendance because she had lost her storage.  Because the juvenile court did not find mother's testimony credible, we can reasonably infer that the court found that she did not attend or complete the 12-step program.  Mother's failure to participate regularly in court-ordered services necessarily means that she did not make substantive progress in them at the time of the six-month review. (*B.D., supra,* 110 Cal.App.5th at p. 1140 [substantive progress assesses "whether a parent has demonstrated meaningful engagement and improvement in the various educational, therapeutic, and assistive components of the case plan"].) Further, mother failed to utilize the skills taught in her anger management program as she continued to yell and curse at the SCA in front of minors and tested positive for drugs at the review hearing in October 2025 despite agreeing to be free from substances.

Accordingly, there is more than enough evidence to support the juvenile court's finding that mother failed to participate regularly and make substantial progress in court-ordered services.

9

## 2. *Substantial Probability of Return*

Mother next contends that given her progress in her court-ordered services, the juvenile court erred in finding no substantial probability of minors' return to mother within six months.  We can swiftly dismiss this argument because, as detailed above, mother did not regularly participate in or make substantive progress in court-ordered services.

Initially, we note that mother incorrectly relies on section 366.21, subdivision (g)(1), in analyzing whether a substantial probability of return exists.  That subdivision applies at the 12-month review hearing and states that the juvenile court "shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of their parent."  (§ 366.21, subd. (g)(1).)  It includes three factors that must be met for a finding of substantial probability, including that the parent "has made significant progress in resolving problems that led to the child's removal."  (§ 366.21, subd. (g)(1)(B).)  By contrast, the substantial probability standard applicable at a six-month review hearing under section 366.21, subdivision (e), does not include any factors.  Thus, the court "may take all of the evidence into consideration in making its findings" and is not limited to the three factors of subdivision (g).  (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 181.)

Here, the juvenile court concluded that due to mother's longstanding substance abuse, anger management, and mental health issues, there remained "a substantial risk of detriment to [minors'] safety, protection, physical and emotional well-being."  Based on the reports and testimony, the court found no substantial probability of return within six months because mother had not made significant progress in resolving those issues or accepted any responsibility for them.  Substantial evidence supports this

finding based on mother's lack of regular participation in the required classes, continual drug use, denial of her parental failures that led to minors' removal, and incidents of verbal aggression with the SCA.

Citing *In re Ma.V.* (2021) 64 Cal.App.5th 11, mother argues that she should not be faulted for having an unfriendly relationship with the social worker. In *In re Ma.V.*, the Court of Appeal did reverse the juvenile court's jurisdiction and detention orders, reasoning that "[t]he ability of a parent to get along with a social worker is not evidence from which a removal order can be supported." (*Id.* at p. 25.) But here, mother was not only uncooperative with the social worker, she also yelled and cursed at the SCA on multiple occasions *in front* of minors. Moreover, mother failed to participate regularly and substantively in many aspects of her case plan and continued to struggle with substance abuse and anger management.

Accordingly, there is more than enough evidence to support the juvenile court's finding of no reasonable probability of minors' return to mother.

### III. DISPOSITION

The petition is denied. Because the section 366.26 hearing is set for February 19, 2026, our decision is final as to this court immediately. (Rules 8.452(i), 8.490(b)(2)(A).)

CHOU, J.

WE CONCUR.

JACKSON, P. J.
SIMONS, J.