File 5/18/22  In re W.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| In re W.S., a Person Coming Under the Juvenile Court Law. | C095170 |
| YUBA COUNTY HEALTH AND HUMAN SERVICES DEPARTMENT,<br><br>    Plaintiff and Respondent,<br><br>   v.<br><br>S.A.,<br><br>    Defendant and Appellant. | (Super. Ct. No. JVSQ2000034) |

S.A., mother of the minor W.S., appeals from the juvenile court's orders denying mother's petition to change the juvenile court's order terminating her reunification services and thereafter her parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 388; statutory section citations that follow are to this code.)

1

Mother contends the juvenile court erred when it denied her section 388 petition without a hearing. We affirm the juvenile court's orders.

## FACTS AND HISTORY OF THE PROCEEDINGS

Mother was pregnant with W.S. in late 2019 into early 2020. On December 9, 2019, during her pregnancy, mother tested positive for amphetamine, methamphetamine, and THC. She also tested positive for cannabinoids on January 19, 2020, and February 7, 2020. In early February 2020, mother was diagnosed with gestational diabetes, preeclampsia, and chronic hypertension. Her physician recommended she deliver her child immediately because the child was at risk due to these medical conditions. Mother rejected this recommendation and left the hospital against medical advice.

Mother gave birth to the minor later in February 2020. The Yuba County Health and Human Services Department (Department) received an emergency response referral concerning mother. When the social worker arrived at the hospital and contacted mother, mother was generally uncooperative, but admitted she had engaged in "heavy marijuana use during the pregnancy."

On March 4, 2020, the Department filed a dependency petition on behalf of the minor under section 300, subdivision (b)(1). The petition alleged mother failed to protect her newborn child because she tested positive for THC at the time of the minor's birth. The petition further alleged mother left the hospital with the newborn minor against medical advice and before the minor could be tested for drugs in her system. The petition alleged the minor was not in mother's care when the Department served her with a protective custody warrant and mother refused to cooperate with the Department to locate the child.

The petition also alleged mother previously had another daughter removed from the care of that child's legal guardian in 2013. Despite having been offered family

2

reunification services, those services were terminated and mother did not reunify with that child who was ordered into another legal guardianship in 2019.

When the social worker contacted the maternal grandparents and advised them she had a custody warrant for the newborn minor, they also refused to cooperate with the Department and were verbally aggressive with the social worker. The grandparents claimed the newborn was in the Bay Area and/or out of state. Shortly after, mother called the Department to ask why the police and the Department had been looking for her. Mother told the Department the minor was in the Bay Area and refused to allow the Department into her home. Despite her refusal to allow the Department to look inside her home for the minor, the Department concluded exigent circumstances existed and searched mother's home. The Department did not find the minor.

Throughout these proceedings, father was incarcerated at San Quentin State Prison.

At the March 5, 2020 detention hearing, mother appeared, but father did not. The juvenile court found the Department made a prima facie showing the minor came within section 300 and entrusted the minor to the Department for placement. The juvenile court ordered mother to disclose the location of the child by the end of that day. The juvenile court further ordered supervised visitation for mother at least three times per week for an hour. The juvenile court ordered services for mother including a mental health assessment, substance abuse assessment, and random observed drug testing. The juvenile court continued the hearing for a week.

Mother presented the child to the Department the day after the original detention hearing and prior to the March 11, 2020, continued hearing. She refused to submit to a drug test prior to the continued detention hearing.

In her interview with the Department, mother asserted she did not have a substance abuse problem and the positive methamphetamine test was both false and illegally obtained. She claimed she was falsely accused in her arrest in 2017 for

possession of methamphetamine and not prosecuted because the substance was not hers. In March 2020, mother again tested positive for THC in two separate drug tests.

Mother did not appear at the April 30, 2020, jurisdictional hearing at which the juvenile court sustained the petition. The jurisdictional report noted mother visited the minor until the Department's visitation center was shut down on March 20, 2020, due to COVID-19 protocols. The juvenile court ordered visitation to occur by video or telephone.

In the case plan attached to its disposition report, the Department recommended that mother receive reunification services. These recommended services included child and family team meetings, visitation, counseling, and mental health and substance abuse services. The plan required mother to call the Department daily for drug testing. The Department recommended that mother participate appropriately at all child family team meetings and secure suitable safe and appropriate housing for the minor.

At the June 18, 2020 dispositional hearing, the juvenile court ordered the Department to provide mother with the above noted services and bypassed the father under section 361.5, subdivision (e) due to his incarceration. It noted mother's progress towards alleviating or mitigating the causes requiring removal was minimal.

Despite the court's order, mother refused to test twice more in August and October of 2020. She was advised these tests would be deemed "dirty" due to her refusal.

In its report for the six-month review hearing, the Department noted mother reported having purchased a home. Mother forgot or canceled five visits with the social worker intended to allow the social worker to inspect her home to demonstrate her compliance with that part of her case plan. Mother also informed the social worker she could not come see the house until after the current remodel work was complete. When the social worker was finally able to inspect the home, it was still under repair in such a way as to be dangerous for the minor to live there.

4

The six-month review report detailed mother's regular uncooperative behavior at family team meetings. Mother interrupted others during the meetings, yelled at the social worker, and was generally disrespectful.

The report also highlighted mother's sporadic participation in visitation. During the period of review, the report noted she had completed 14 out of the 40 possible visits. At the hearing, the social worker testified overall, mother missed 21 visits out of 55 total visits. When she attended visitation, mother was not cooperative and refused to follow the visitation center rules. Mother claimed her employment interfered with her visitation, but refused to provide any evidence of this employment to her social worker. Mother also claimed she missed four weeks of visits because she was quarantined due to COVID-19.

The report noted mother also declined to submit to required drug testing. Despite the requirement she call in daily for drug testing, mother called in sporadically. She claimed not to understand why she had to drug test because she was "clean." Of the seven tests administered, however, two were positive for marijuana, three were negative, and mother refused two.

Despite the loss of custody of her child in March 2020, mother did not start to participate in a residential drug treatment program at Skyway House until December 2020. Mother, however, limited the information Skyway could share with the Department and directed the Skyway House not to send its assessment to the Department.

At the conclusion of the six-month review hearing, the juvenile court concluded the Department provided reasonable services to mother. The juvenile court also found mother had made significant progress in resolving the problems that led to the removal. Despite the Department's request the juvenile court terminate reunification services, the juvenile court extended mother's reunification services at the February 4, 2021 hearing.

Following the six-month review, mother continued to fail to meet her visitation obligations. Mother continued to be disrespectful in the child family team meetings. She

5

also failed to submit to drug tests. At the February 24, 2021 interim hearing, the juvenile court admonished mother to submit to the required tests and to make and keep all of her visitation appointments.

Despite the juvenile court's admonishment, the Department's follow up report described mother's visitation following that hearing as "minimal at best." Mother alienated the maternal grandmother who was supervising some of the visitation. As a result, the maternal grandmother canceled the visitations grandmother was supervising. Mother also failed to attend many scheduled visitations that were to be supervised by the Department.

Between February and April 2021, mother tested positive for methamphetamine and/or amphetamine seven times. She continued to fail to call in for drug testing daily as required. In February, Skyway House terminated mother from their program due to her failure to obtain services for 30 days. Skyway House reported her prognosis at the time of discharge was poor.

Mother subsequently enrolled in the Progress House drug treatment program in March 2021 but was discharged unsuccessfully after a single day in treatment with a positive drug test for methamphetamine and amphetamine. She then enrolled in the Pathways and Granite Wellness program but was discharged unsuccessfully from that program after only four days of treatment. Both Pathways House and Granite Wellness reported her prognosis was poor on discharge. Despite efforts of her social worker to get her readmitted to the Progress House program, mother missed two subsequent appointments for readmission, and Progress House stated they would not readmit her.

In addition to failing to succeed in the substance abuse programs, continuing to abuse substances, refusing to submit to required drug tests, failing to call in daily, and failing to regularly visit the minor, mother failed to attend the mental health sessions and parenting classes required by her case plan. Mother never admitted she had a drug

6

problem. Mother did, however, remedy the social worker's concerns about hazards in the home and was respectful during the child family team meeting.

The 12-month review hearing took place on April 29, 2021. Mother represented to the juvenile court she had enrolled in the Skyway House the day before the hearing. At the hearing, the juvenile court received the information about mother's lack of progress noted above and terminated mother's reunification services. The juvenile court ordered visitation two times per month pending the section 366.26 hearing.

In the permanent plan report, the Department stated the minor, who was then 16 months old, had been living in the same placement since she was 24 days old. She was thriving and the current foster mother was ready and willing to adopt the minor.

Mother attended three out of the four visits ordered at the April hearing. She was unable to attend the last one because she tested positive for COVID-19. At the visit just prior to the hearing on the selection of a permanent plan, mother brought numerous items to visitation that were not age appropriate for the minor. When the Department shared this information, mother was not receptive. Mother continued to engage in aggressive communications with the social worker and sent threatening messages to the minor's foster parent.

As noted above, mother had reentered Skyway House in April of 2021. She was discharged on July 10, 2021. Despite her completion of the 74-day program, Skyway House reported her prognosis on discharge continued to be poor. In its July discharge summary, Skyway House reported mother had an opportunity to live in a sober living environment upon her discharge, but mother chose to go home instead.

In August 2021, mother filed a petition for modification under section 388 requesting to change the juvenile court order. She sought reinstatement of reunification services or, alternatively, return of the minor to her custody. Mother's petition asserted she had "made strides in her life to correct the problems that brought her before the Court and can provide the minor child with a stable and secure living environment. Being with

7

her parent would be most beneficial for the minor child. If placed with [m]other she would still have contact with the maternal side of the family." Mother included her declaration and a letter she wrote while in the Skyway House program. She also included a letter from mother's therapist attesting to the treatment she had received between February 25 and June 23, 2021. Mother submitted no other documentation.

In the declaration, mother stated she completed a 74-day residential treatment program at Skyway House on July 10, 2021. She asserted she tested clean during her time in the Skyway House program until her discharge in July 2021 and she remains sober. She provided no information about any testing protocol she had followed after her discharge. Mother stated she owns her home and it is safe for the minor. She asserted she had engaged in therapy. At the conclusion of the Skyway House program, mother declared she lost her bed at another sober living environment due to COVID-19 and was awaiting another placement as soon as a bed becomes available. Mother stated she had completed a substance abuse disorder assessment, was attending NA meetings three times a week and weekly meetings with a group at Butte County Behavioral Health for counseling and therapy. She asserted she had taken some parenting courses and she was now employed by Live Nation, but still in training to become a guest ambassador for events. She stated she was in the process of clearing one warrant and another had recently been dismissed. Finally, she declared she was attending church and rekindled her relationship with the maternal grandmother.

Mother attached an undated letter to her declaration she wrote to the court while she was in the Skyway House program the second time. In that letter, mother admitted she has the disease of addiction and asserted she has four new goals to start after recovery. She relayed she had attended 130 meetings, and had 13 clean tests.

At the August 26, 2021 hearing, the juvenile court terminated the father's parental rights and ordered a permanent plan of adoption. Father did not file a notice of appeal.

8

At that same hearing, the juvenile court continued the hearing on mother's section 388 petition and the 366.26 hearing as to her parental rights to September 2021.

At the September 2021 hearing, the juvenile court found mother's petition did not show her circumstances had changed, but instead were merely changing. The juvenile court found mother had not made a prima facie showing of a material change in circumstances or that her requested change was in the minor's best interest and thus an evidentiary hearing was not warranted.

The juvenile court also stated it agreed with the Department that granting further reunification services was a legal impossibility because 18 months had passed since the child was removed. Mother's counsel did not object to that conclusion, but rather stated, "in terms of the legal impossibility, I understand the services issue. But our other part of our request was to have [the minor] returned." Following the denial of her petition, the juvenile court terminated mother's parental rights and ordered a permanent plan of adoption.

DISCUSSION

Mother contends the juvenile court abused its discretion when it denied her section 388 petition without a hearing. She claims the petition showed both a change in circumstances and the requested modification would be in the minor's best interests. Her argument is not persuasive.

A petition to change or modify a juvenile court order under section 388 must factually allege there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minor's best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48, disapproved of on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) The parent must make

9

" '[s]pecific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.] Successful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing of the change in circumstances or new evidence." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) In assessing the petition, the juvenile court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

The petition must be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 5.570(a).) The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. (*In re Daijah T.*, *supra*, 83 Cal.App.4th at p. 673.) "A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited." (*Ibid*.) Nonetheless, if the juvenile court finds the petition fails to make a prima facie case as to either or both tests under section 388, the juvenile court may deny the petition without an evidentiary hearing. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d).) We review the summary denial of a section 388 petition for abuse of discretion. (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250; *In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Here, mother failed to make the prima facie showing necessary to obtain a hearing. Mother's claimed change in her circumstances is her conclusory statements, that after three separate drug abuse programs discharged her and the court terminated her reunification services, she enrolled in and completed one 74-day inpatient treatment program, tested cleanly during that program, remained clean, attended weekly therapy sessions and NA meetings, and was now waiting for a bed to open at a sober living environment. She attached no documentation of her testing or meeting attendance, nor

10

did her petition provide any detail as to what evidence she might produce at a contested hearing. While she claimed she had undergone clean tests during the program she completed at Skyway House, her petition detailed no actual tests during her stay. The discharge summary submitted by the Department confirmed she had tested cleanly. Mother's petition, however, contained nothing about the results of any tests after July 7, 2021, or her current testing regimen since her discharge from Skyway House. Moreover, mother implicitly acknowledged her circumstances had not changed when she stated she is currently waiting for a bed to open up in a sober living environment, and submitted the letter stating she had new goals to start after recovery. Her need for this type of further structure in her life demonstrates mother has not completed a change in her circumstances, but now is making an effort to change them.

Mother's claim must be examined in light of her history of drug use and repeated documented failures to stay clean. The genesis of this case was mother's positive tests for THC, amphetamine, and methamphetamine while she was in the final stages of pregnancy with the minor. She again tested positive for marijuana prior to the jurisdictional hearing. Prior to the six-month review hearing, she again tested positive for marijuana and refused other tests, which were presumptively positive. Following another order to engage in drug testing, mother refused two more tests, which are presumed to be dirty. Between February and April 2021, mother again tested positive for methamphetamine and/or amphetamine seven times. Throughout this case, she continued to fail to call in for drug testing daily as required.

Mother's recent completion of the Skyway House program with 74 days of sobriety is even less evidence of a change in circumstances because she had already tried and failed three separate treatment programs for her drug addiction during the pendency of this action. (See *In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642, disapproved of on other grounds by *In re Caden C., supra*, 11 Cal.5th at p. 637, fn. 6.) She was unsuccessful in the Skyway House program the first time around and

11

unsuccessful in two other separate programs. Upon her discharge from these programs, all three of the programs assessed her future prognosis as poor. And more telling, Skyway House still reports her prognosis is poor.

Mother's allegation of her completion of a 74-day drug program and participation in NA and group meetings was not prima facie evidence of a change in circumstances. "In the context of a substance abuse problem that has repeatedly resisted treatment in the past, a showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program." (*In re N.F.* (2021) 68 Cal.App.5th 112, 121.) As the cases demonstrate, mother's brief period of sobriety is not enough to demonstrate a change in circumstances. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [changed circumstances were not satisfied by three months of sobriety]; *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423 [changed circumstances not satisfied by father's seven months of sobriety]; *In re Kimberly F., supra*, 56 Cal.App.4th at p. 531, fn. 9 ["Likewise the parent who loses custody of a child because of the consumption of illegal drugs and whose compliance with a reunification plan is incomplete during the reunification period. It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].) Mother's conclusory declaration about her 74 days of sobriety was too little too late to demonstrate mother's circumstances had changed.

Mother's allegations about her new job and housing were not material changes within the meaning of section 388. (*In re N.F., supra*, 68 Cal.App.4th at p. 122.) Mother had the same housing when reunification services were terminated that she identified in her petition. Like the mother in *N.F.*, the juvenile court here denied mother reunification services due to her substance abuse history. Without a showing her substance abuse had materially changed, new employment does not create the required prima facie showing. (*Ibid.*)

As the juvenile court found, the best that can be said of mother's petition is it shows she was in the process of changing, but had not set forth a prima facie showing of a change of circumstances. Given mother's failure to demonstrate a prima facie case of changed circumstances, we do not reach the issue of whether mother also made a prima facie showing of how a change in the order would be in the best interest of the minor. (*In re Casey D., supra*, 70 Cal.App.4th at p. 48.)

Mother further argues the juvenile court's termination of the father's parental rights prior to its hearing on and termination of mother's parental rights was error. She claims because the juvenile court had already terminated the father's parental rights, the juvenile court "may have, and most probably did, consciously or subconsciously, view the facts presented in the request to change court order [petition] in a light skewed against, and prejudicial to, mother."

We agree the juvenile court's termination of father's parental rights, while continuing the hearing for consideration of mother's parental rights, was error. California Rules of Court, rule 5.725(a)(1) expressly states, in pertinent part that, "The court may not terminate the rights of only one parent under section 366.26 unless that parent is the only surviving parent; or unless the rights of the other parent have been terminated by a California court of competent jurisdiction . . . ." (See also *In re Vincent S.* (2001) 92 Cal.App.4th 1090, 1093; *In re A.J.* (2022) 77 Cal.App.5th 7, 11.)

In this case, however, the juvenile court's error was harmless. We may reverse a juvenile court order only if we conclude it is reasonably probable the result would have been more favorable to the appealing party but for the error. (*In re Celine R.* (2003) 31 Cal.4th 45, 60.) Here, mother's supposition as to how the juvenile court may or may not have viewed the case, consciously or subconsciously, is insufficient to establish it is reasonably probable the result would be more favorable to her absent this error.

Mother also argues the juvenile court was mistaken when it said ordering reunification services was a legal impossibility during the August 2021 hearing because

the 18-month deadline for providing reunification services could be extended under section 361.5, subdivision (a)(4)(A).  Mother, however, fails to develop a coherent argument that her circumstances met the strict requirements for services to be extended, and if they did, how this would have affected the denial of her petition for changed circumstances.  As such this contention has been forfeited.  (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007.)

We are not surprised counsel did not develop this argument in the brief as mother's counsel withdrew her request for extended reunification services at the hearing when counsel stated, "in terms of the legal impossibility, I understand the service issue.  But ur other part of our request was to have [the minor] returned."  Counsel likely made this concession because mother alleged nothing in her petition that would allow the juvenile court to make the required findings before it could order extended reunification services.  (*San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223 [to extend services the court was required to find the mother "(1) regularly visited the minor; (2) has made significant and consistent progress in resolving the problems that led to removal; and (3) has completed, or demonstrated the capacity and ability to complete, the substance abuse plan as evidenced by the provider's reports, or the parent has returned from deportation, and that the parent has demonstrated the ability to provide for the minor's safety and well-being"].)

We conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition without a hearing.

DISPOSITION

The juvenile court's orders are affirmed.

_____
HULL, J.

We concur:

_____
BLEASE, Acting P. J.

_____
RENNER, J.