Filed 6/30/22  M.D. v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| M.D., | C094643 |
| Petitioner, | (Super. Ct. No. 53005000) |
| v. | |
| THE SUPERIOR COURT OF PLACER COUNTY, | |
| Respondent; | |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al., | |
| Real Parties in Interest. | |

M.D. (petitioner), mother of C.G. (minor), seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) to vacate the juvenile court's orders terminating her reunification services, declining to return the minor to her custody, and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1]

Real party in interest Placer County Department of Health and Human Services (Department) supports mother's petition, agreeing the challenged orders should be reversed due to insufficient evidence supporting the juvenile court's finding of substantial risk of detriment to the minor. The minor opposes the petition. We stayed the section 366.26 hearing in the juvenile court pending the resolution of this writ petition and issued an order to show cause. As we next explain, we direct the juvenile court to vacate the challenged orders and hold a new review hearing.

FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2020, the Department filed a section 300 petition on behalf of (then) eight-year-old C.G. (born September 2011). The petition alleged, under section 300, subdivisions (a), (b)(1), and (c), that father's domestic violence issues and use of aerosol inhalants placed the minor at substantial risk of serious physical and emotional harm. Because the evidence supporting the allegations against father is not relevant to this writ proceeding, we omit the details of his transgressions. There were no factual allegations relating to mother, whom the Department had not yet located. The minor was detained and placed with the paternal grandparents (grandparents). The minor had a close bond with the grandparents; they were his primary caretakers while father was incarcerated.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

Mother was located living in Oregon; she appeared prior to the jurisdiction hearing. She and father had been litigating the minor's custody since January 2015. In November 2017, the family court had awarded father legal and physical custody, giving mother scheduled telephone contact and one weekend visit per month. Father had been ordered not to interfere with this contact. After further litigation, the parents were given joint legal custody of the minor, with father having primary physical custody and mother provided scheduled telephone contact and two weekend visitations per month. Father had again been ordered not to interfere in this contact. Mother had filed a motion requesting a contempt order in November 2018 based on allegations that father had violated the custody orders, but the matter was dismissed when neither parent appeared at the January 2019 hearing.

Mother reported she had lived with father until just shy of the minor's second birthday when she left, taking the minor with her, due to father's domestic violence. Around the minor's third birthday, her family convinced her to let the minor live with father until she "got things straightened out because [she] did not have a job." She had last visited the minor in October of 2018. Mother stated father had thwarted her attempts to contact and visit the minor.

Father stated he had "kicked [mother] out" after finding a methamphetamine pipe under the sink. He reported she came back but left again when the minor was three years old. He stated that when she had visitation every other weekend, "she kept screwing that up." Her last visit had occurred in October 2018 and she "refused to bring" the minor back; after he called the sheriff's department, she brought the minor back at 3:00 a.m. Father denied having obstructed her attempts to contact or visit the minor.

The jurisdiction hearing was held on March 17, 2020; the parents submitted on the report as to jurisdiction and mother indicated she would be seeking placement at the disposition hearing. The Department had recommended against placement with mother in its report prepared for the hearing, citing the lack of stability in her recent and current

3

living situations. Of particular relevance here, the Department noted mother had displayed a pattern of intermittent contact with the minor throughout the litigious family law process and had gone over a year without seeing the minor. When asked why she did not take appropriate action in family court, mother indicated she had believed she needed an attorney to appropriately represent her. Mother admitted bringing the minor back late on numerous occasions and that she should have been more diligent in the custody exchanges. Noting that father may have interfered with the minor's contact with mother, the Department was concerned that mother did not take the appropriate action to ensure participation in her designated parenting time. The Department requested time to engage mother in services "to more thoroughly assess her relationship with [the minor], her living situation and her relationship with her fiancé" and to support her in developing a connection to the minor.

The March 2020 report concluded that the minor was adjusting well in his placement with the grandparents. He was reported to have a close bond with his father's side of the family. The minor was very comfortable and familiar with his grandparents as caretakers and with the home environment. In addition to primary caretaking during father's incarceration, the grandparents had cared for the minor for extended periods of time due to father's substance abuse. The minor's older half sibling was often at the grandparents' home. The minor also had a relationship with mother's other two children, his younger half siblings.

After hearing argument at the disposition hearing held on April 21, 2020, the juvenile court found placement with mother detrimental to the minor due to several concerns, but primarily because she had not had contact with the minor since October 2018. The court removed the minor from parental custody and ordered reunification services and visitation for both parents, setting a placement review hearing in July and the six-month review hearing in October.

4

In the report prepared for the July 8, 2020 review hearing, the Department noted that mother had actively participated in the parenting curriculum and provided negative drug tests. Her visits were consistent and her relationship with the minor had improved. The minor began responding that he loved her when she said it to him and continued developing his relationships with his maternal half siblings. Mother wanted what was best for the minor and had moved to the Redding area to be closer to him. But the minor was "fearful if he was to ever live with [mother] that he would not see his paternal family." The Department did not recommend any changes as to placement, and the review hearing focused primarily on father's lack of progress.

In a report prepared in anticipation of the October 20, 2020 six-month review hearing, the Department reported that mother continued to actively participate in therapy; her therapist reported she was a "fiercely devoted mother" who was willing to do whatever is necessary to have the minor back in her life on a regular basis. She traveled weekly for in-person visits with the minor. She noticed the minor was "resistant," but she was "very patient and understanding of [the minor's] feelings." When asked about overnight visits or unsupervised visits with mother, the minor responded, "I would have to go all the way there and all the way back. No I don't feel comfortable staying the weekend, that's basically living with her." He added, "I don't want to feel more comfortable. I want it to stay like this. I'll never get used to [living with my mother.]" The Department noted mother's progress but that the minor was resistant to her efforts; because he was not yet ready for supervised visits despite mother's requests, the Department did not recommend placement with mother. The special advocate observed the minor's needs were being met by the grandparents and recommended continued placement with them.

At the six-month review hearing, mother submitted on the Department's recommendations for continued removal and services, representing through counsel that despite the fact that she was doing well, she understood the minor was reluctant to come

5

live with her and did not want to cause him further discomfort. The minor's attorney represented that the minor was "not particularly fond of visits" and "is not interested in counseling with his mother," but noted as the rationale behind the sentiments only that it was a three-hour drive and the minor thought he was missing too much school. The court continued placement with the grandparents and ordered a conjoint counseling referral for the minor and mother, noting that the minor did not want to "be disloyal" to father but that father was not doing well with his services.

The Department reported ahead of the March 16, 2021 review hearing that mother had moved to the Shasta Lake area to be even closer to the minor. The Department liberalized visits and the minor described his visits with mother as "good." He also became more receptive to overnight visits but expressed dislike for the time spent in the car traveling to mother's house. He wanted to spend more time with mother but did not want to live with her. Mother continued to fully participate in her case plan and had completed her services "early on." Given the minor's continued reluctance to live with mother, the Department continued the recommendation for the minor to stay with the grandparents while continuing to strengthen his relationship with mother.

At the hearing, mother submitted to the recommendation and the juvenile court continued services for both parents and continued minor's placement with the grandparents. The court ordered unsupervised and overnight visitation for mother.

The 18-month review hearing took place on August 4, 2021. No concerns had been noted with mother's overnight and extended visits (lasting as long as a week) that had begun in February 2021. The minor reported no safety concerns and described the visits as "fine." He maintained, however, that he did not want to live with mother, as he was concerned that he would not be able to see his paternal relatives. The Department concluded mother had demonstrated motivation to change and a commitment to providing the minor with a safe and loving home. The social worker's report stated that "[m]other has been patient throughout [the minor's] resistance and reports she wants to

6

foster a continued relationship for [the minor] with his paternal relatives because she knows that is what is best for him. While [the minor] consistently reports he does not want to live with his mother, when he does go visit he does not report any concerns to the [social worker] and the mother reports that the visits go well." The Department noted its initial concerns with mother's lack of stability and residence were no longer an issue. The social worker did not believe placement of the minor in mother's home would be detrimental to the minor and the Department recommended he be returned to mother's custody. It further recommended that mother be provided family maintenance services to help with the minor's transition and provide oversight and to ensure he was provided with any services he may need to aid him during the transition, and that father be provided with at least two relative-supervised visits per month, including the possibility of supervised overnight visits at the grandparents' home.

The minor submitted a letter to the court that he had written with the assistance of his grandmother. The letter stated the minor did not "want to live with [m]om because we don't have a great relationship, because I have not lived with her for a long time." It stated the minor did not have a bond with mother and wanted to stay with his grandparents because he would miss his father and other paternal relatives as well as his home and school. At the hearing, he testified he wanted to live with father because he had lived with father for longer than mother. The special advocate testified the minor was in a stable and comfortable place with the grandparents and felt very loved and supported in their home.

Mother testified the minor appeared happy during visits. He was always engaged in what they were doing and she encouraged him to be open and honest about his feelings. She permitted him to use his cell phone to call his grandparents and father during visits any time except after 10:00 p.m. He was developing a relationship with his two younger half siblings and was making friends with children in the neighborhood. She had only one conjoint counseling session with the minor and thereafter was told he

7

did not want to continue with counseling. She was supportive of resuming his, or joint, counseling to assist the minor in a transition to her home. She would support him emotionally as needed and she intended to support his ongoing relationships with father and the grandparents.

The juvenile court found that mother had made substantial progress toward alleviating the reasons the minor was removed but that returning him to her care would impair his emotional security. In making what it characterized as a "difficult decision," the court explained that "[t]his is not to say that mother is not perfectly willing, capable or committed to caring for [the minor]. Using the terms of her counselor, [m]other is fiercely devoted. She has done everything I asked her to do and more. She has shown a great deal of patience and grace throughout this process . . . ." "I've seen again amazing grace, amazing humility [from mother], and I think she has fought for [the minor] but not pushed him. And that is hard. She was patient. She didn't force [the minor] into uncomfortable situations. She allowed [the minor] to call Dad and grandparents any time he wanted." The court further noted that the minor has lived in the same area since he was very young and had spent a lot of his life with his grandparents. "These relationships give him comfort and stability. Grandparents gave him a safe place when [f]ather was actively using and [m]other was absent." The court then concluded that moving the minor to mother's home would be a "tremendous upheaval in his life, and he has already been through so many upheavals at the hands of his parents. He would lose his sense of stability and that is critical to his mental and emotional health."

The time for reunification services having expired, the juvenile court terminated reunification services and set the section 366.26 hearing.

Mother filed a timely notice of intent in August 2021; briefing was initially completed in October 2021. This court ordered supplemental briefing on the issue of reasonable services related to joint counseling, which was completed in December 2021 and the matter was placed under submission. This court vacated submission and issued

an order to show cause in March 2022; the matter was fully briefed in April 2022 and assigned to this panel as presently constituted in June 2022. The parties did not request oral argument.

DISCUSSION

Mother and the Department argue insufficient evidence supports the juvenile court's detriment finding; the minor disagrees. We review the finding for substantial evidence. (*Angela S. v. Superior Court* (1995) 36 Cal.App.4th 758, 763.) Substantial evidence is evidence that is "reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case." (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1401.) If the reviewing court does not find substantial evidence of detriment, it must return the minor to parental custody. (*Ibid.*)

As relevant here, the 18-month review hearing is governed by section 366.22. Section 366.22, subdivision (a)(1) provides, in relevant part: "When a case has been continued pursuant to paragraph (1) or (2) of subdivision (g) of Section 366.21, the permanency review hearing shall occur within 18 months after the date the child was originally removed from the physical custody of his or her parent or legal guardian. After considering the admissible and relevant evidence, the court *shall* order the return of the child to the physical custody of his or her parent or legal guardian *unless* the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. . . . In making its determination, the court shall review and consider the social worker's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5; shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself of services provided . . . ; and

9

shall make appropriate findings pursuant to subdivision (a) of Section 366." (Italics added.)

The juvenile court is required to state its reasons on the record if it does not return the minor to parental custody. (§ 366.22, subd. (a)(2).)

The juvenile court may not extend reunification services beyond 18 months from the date of initial removal unless it makes specific factual findings not applicable here. (§ 366.22, subd. (b)(1)-(3); *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 222.) Thus, the available options at this 18-month review hearing were to return the minor to parental custody (with or without maintenance services) or terminate reunification services and set a section 366.26 hearing. (§ 366.22, subd. (a).) Here, the juvenile court chose the latter option, which, as we have set forth above, requires a showing "by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.22, subd. (a)(1).)

The parties provide us with no cases directly analogous to the instant matter that are on point, and we have found none. Indirectly analogous cases are somewhat instructive, but concern return of children to their nonoffending, noncustodial parents who have thus far been denied return (like mother here) at *disposition* rather than at the final review hearing, as happened in this case. At disposition, the required finding of detriment must be shown by clear and convincing evidence. (§ 361.2, subd. (a); *In re C.M.* (2014) 232 Cal.App.4th 1394, 1400.) As we have set forth above, at a review hearing failure to return to a parent requires a finding of substantial risk of detriment by a preponderance of the evidence. (§ 366.22, subd. (a)(1).)

Here, the Department recommended return to mother and the social worker opined that return would *not* result in substantial risk of detriment to the minor. No witness or evidence contradicted that opinion. Although the minor testified he would rather live

10

with his father, he expressed no concerns regarding his extended visits with mother other than the distance and the fact that he did not want to lose contact with his paternal relatives. The Department recommended continued services and visitation for father that included overnight visits in the grandparents' home. Mother testified to her commitment to maintain that contact and had twice relocated to be closer to the minor and paternal relatives. Nonetheless, the juvenile court found substantial risk of emotional harm by a preponderance of the evidence were the minor to be returned to his mother.

In *In re C.M., supra,* 232 Cal.App.4th 1394, the child had lived with her mother in the maternal grandparents' home prior to detention. Following the mother's arrest, a petition was filed on behalf of the child. The child's father, who was nonoffending, requested custody at disposition. (*Id*. at pp. 1397-1398.) The father had provided financial support and maintained a relationship with the child. He saw her on weekends, had unmonitored overnight visits with her, and had frequent telephone calls. (*Id*. at pp. 1396-1397.) Nevertheless, the child was "adamant" that she did not want to live with her father because she did not want to leave her maternal grandmother or change schools. (*Id* at p. 1399.) The Department and the child argued the evidence was sufficient to support a finding of detriment by clear and convincing evidence, emphasizing the child wanted to remain with her grandparents; she wanted to visit but did not want to live with father; she did not want to be separated from her half sibling or change schools; the father worked long hours and was often away from home, as a result of which the child would often be in the care of her stepmother; although he was nonoffending, the father had a history of alcohol abuse (as reported by the mother) and a 20-year-old domestic violence conviction. (*Id.* at p. 1402.)

The appellate court reversed the juvenile court's finding of detriment as unsupported by substantial evidence. The court noted that, while the child's wishes, sibling bonds, and relationship with the noncustodial parent may be considered by the juvenile court in determining whether placement of a dependent child with a

11

noncustodial, nonoffending parent would be detrimental to the child's physical or emotional well-being, none of these factors is determinative. Under these circumstances, the court found the evidence insufficient to support the detriment finding and place the minor with the maternal grandmother instead of father. (*In re C.M., supra,* 232 Cal.App.4th. at pp.1404-1405.) The court remanded for a new hearing on the issue of placement, permitting the juvenile court to consider new evidence or changed circumstances that may have occurred during the pendency of the appeal. (*Ibid.*)

The facts and circumstances of the instant case are very similar to *In re C.M.*, although we again acknowledge that *In re C.M.* required the detriment finding be made by clear and convincing evidence, and this case does not.

In *In re John M.* (2006) 141 Cal.App.4th 1564, the appellate court found that the juvenile court's stated bases--the child's wishes, need for services, relationship with his sister and members of his family, and lack of relationship with the father, as well as the "paucity of information" about the father, and the mother's reunification plan--did not constitute substantial evidence of detriment in returning the child to father's custody. (*Id.* at p. 1570.) In that case, the father, after four years of no contact with his 13-year-old child, had resumed contact a year prior to the dependency proceeding, and the court found the previous lack of contact was not the father's fault. (*Id.* at pp. 1570-1571.) Additionally, the social worker had no information that the father could *not* meet the child's special needs, the child's wishes were not clear, and there was no evidence the child was strongly attached to his baby sister. (*Ibid.*)

In *In re Patrick S.* (2013) 218 Cal.App.4th 1254, the appellate court found the juvenile court's stated bases--the child's wishes, anxiety about moving to his father's home, need for continued therapeutic services, and lack of an established relationship with the father and stepmother, as well as the father's scheduled deployments and plan to homeschool the child, and the lack of available child welfare services in the father's home state--did not constitute substantial evidence of detriment. (*Id.* at p. 1262.) In that

case, the father had served in the Navy and had searched for his son for years; when he learned of the child's whereabouts, he immediately came forward and requested placement, attended all significant hearings, visited and contacted his son whenever possible, looked into obtaining recommended services through the Navy and his church, and participated in recommended services. (*Id.* at p. 1263.) The appellate court found the record left "no doubt that [the father] is a competent, caring and stable parent"; he had no criminal history, no referrals to child welfare services, and no indication of substance abuse or mental illness or any risk factors in his home. (*Ibid.*)

We recognize that here, the juvenile court found mother was absent for "a variety of reasons" rather than through no fault of her own, as in *In re John M.* and *In re Patrick S.* In the instant case, there is some evidence in the record that mother could have done more to assert her parental rights in the family law court. Further, unlike the child in *In re John M.*, here the minor clearly expressed that he wished to stay placed with his grandparents. These facts distinguish those cases somewhat.

In *In re Luke M.* (2003) 107 Cal.App.4th 1412, the appellate court affirmed a juvenile court's finding of detriment based on the bond between the subject children and their siblings. In that case, the children were described as "extremely connected" to their siblings and the court found them to be "much closer than in normal sibling relationships" and that separation "would have a devastating emotional impact" on them. (*Id.* at pp. 1426-1427.) The social worker testified that one of the children cried every time she brought up the subject and that he was " 'extremely connected to his siblings and to his relatives and can't even stand the thought of having to leave them.' " (*Id.* at p. 1418.) The social worker also testified about the siblings' attachments. (*Ibid.*) Holding that consideration of the siblings' relationship was permissible (*id.* at pp. 1425-1426), the appellate court held "[t]he record amply supports a finding that there was a high probability that moving to Ohio would have a devastating emotional impact on [the children]. They depended on their siblings for love, support, and security. Since their

13

removal, their only request of the social worker was not to be separated.  They cried and became depressed when she spoke with them about the possibility of separating." (*Id*. at p. 1426.)  Noting that "a detriment finding may not be supportable based on their preferences alone," the appellate court nonetheless found their "preferences may be considered." (*Ibid*.)  The *Luke M.* court also opined on the evidentiary value of the social worker's testimony in that case in response to father's argument of insufficiency:  "Social workers are frequently recognized as experts in assessing risk and placement of children and selecting permanent plans for children.  [Citations.]  Although the social worker here was not formally qualified as an expert, she had been working with these children for four and one-half months, had observed them together on multiple occasions, and had frequently interviewed them.  The social worker's interviews with and observations of the children and her ensuing opinion provided the court with sufficient information to render its ruling.  In the case before us, expert opinion in addition to the social worker's opinion, although certainly helpful, was not essential." (*Id*. at p. 1427.)

Here, there was evidence the minor was bonded with father and his paternal relatives, but no evidence that he experienced trauma from separation (or any other trauma) during his extended visits with mother.  And, in sharp contrast to *In re Luke M.*, here the social worker opined it would *not* be detrimental to the minor to be returned to mother's custody.

In *In re A.C.* (2020) 54 Cal.App.5th 38, cited by the minor in his briefing, the father argued the juvenile court's finding of detriment must be reversed because it hinged entirely on the absence of a father-daughter relationship. (*Id*. at p. 43.)  The appellate court rejected his assertion, noting the juvenile court had considered the Department's reports and that "one of the Department's reports contained 'very clear' information 'that it would be very, almost traumatic, for [daughter] to have to face that kind of move, at her age.'  After making this finding, the court observed, 'there is almost no relationship between the father and the child.' " (*Ibid*.)  The appellate court noted the absence of a

relationship between father and daughter was a permissible factor to consider and that the daughter's wishes, though not dispositive, were also a permissible consideration. (*Ibid*.) The court concluded the evidence relied on by the juvenile court in that case was sufficient to support the risk finding, as not only was the daughter attached and comfortable in her mother's home, but she "actually fear[ed] th[e] prospect" of living with the father, as "[h]e is a stranger to her. She has not heard from him in over five years. Her anxiety about residing with Father is consuming. She cannot sleep. Daughter's therapist concludes removing Daughter from her half brother and the only family she has known in this way would be detrimental to her mental health, affect her academic stability, and cause 'considerable emotional strain.' " (*Id.* at pp. 43-44.)

Here, there is no evidence of any such a negative reaction to living with mother by the minor. There is no evidence of any emotional trauma or even anxiety about living with mother other than not wanting to leave his current living situation. At the time of the hearing, mother was no stranger to the minor; he had been going on extended visits to her home for days at a time and expressed no discomfort other than the distance. There is no expert testimony--or any testimony for that matter--even *suggesting* that living with mother would pose a substantial risk of detriment to the minor's mental health, affect his academic stability, or cause considerable emotional strain.

The minor also cites to *Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689 to argue detriment from moving him from his grandparents' home, but that case is distinguishable. There was expert testimony in *Constance K.* that the mother could not handle return of her children. This evidence, combined with the delay in permanency, along with the stable foster home the children were currently in, was all considered by the juvenile court. (*Id.* at pp. 708-709.) Other than the minor's currently stable placement, where he prefers to remain, no such evidence exists here. And here, unlike in *Constance K.*, contact with his current caregivers will not be severed. To the contrary, his father will continue to co-parent him, presumably with a great deal of help from the grandparents.

15

Clearly, the minor would rather not move to mother's and he feels comfortable where he is. But as much as we sympathize with that desire, and consider it relevant, it is not dispositive; in other words, as we have described above, that is simply not the test.

Here, there was no evidence beyond the minor's statement of his wishes to support the finding that risk of substantial detriment to the minor's emotional well-being was present should he be returned to mother's custody. Mother had successfully completed all her services and there was no evidence she was unable to be a proper parent to the minor, nor did the court make such a finding. (Cf. *Constance L. v. Superior Court* (1998) 61 Cal.App.4th 689, 704-708.) Lengthy visits were described by the minor as "fine," and he expressed no fear and no safety concerns, even when directly asked. Mother recognized the importance of the minor's relationships with father and the paternal family, describing them as "crucial" for the minor, and intended to foster those relationships. The Department's recommendation for the minor's return ensured that *both* parents would retain their parental rights and sought visitation with father and overnights with the grandparents.

While moving to a new area several hours by car from his previous home would certainly be a change for the minor, there is nothing in the record to support a conclusion that the relatively common change in a child's life of moving to a new school or neighborhood would create substantial risk of emotional harm to this otherwise mentally stable minor. Indeed, he had already changed schools while placed with his grandparents in 2020 when they moved to a different house and school district and there was no evidence of any trauma noted. There was no testimony about *risk of detriment*; the only evidence presented on the critical question before the juvenile court was the social worker's assessment that there was *no* risk. No therapist, counselor, psychologist, or social worker opined or even suggested that return of the minor to mother would create a risk of substantial detriment to the minor. (See *In re Jasmon O.* (1994) 8 Cal.4th 398, 430 ["[w]ithout the testimony of psychologists, in many juvenile dependency and child

16

custody cases superior courts and juvenile courts would have little or no evidence, and would be reduced to arbitrary decisions based upon the emotional response of the court"].) Nor was there any evidence that any possible detriment or issues the minor may encounter as a result of placement with mother could not be adequately addressed with transitionary or therapeutic services. Indeed, the minor's relationship with mother was improving over the months as he spent more time with her. Thus, the risk of detriment was speculative on this record.

As pointed out by the Department in its briefing, the juvenile court was not required to order the minor immediately removed from the grandparents' home and placed with mother, and dependency terminated. Although the time for reunification services has expired, the juvenile court may, nonetheless, order the minor transitioned to mother's home with maintenance services, including counseling. The court, the Department and minor's therapist all recognized that conjoint therapy with mother would be useful for minor in this case; although he was apparently permitted to terminate this therapy on his own accord after one session, it could be a useful part of a transition order. Although the minor's desires and feelings certainly may and should be considered, he is not permitted to make his own placement decisions. (See *In re Luke M., supra,* 107 Cal.App.4th at p. 1426.)

The finding by a preponderance of the evidence of substantial risk of detriment to the minor is not supported by substantial evidence.

DISPOSITION

Let a peremptory writ of mandate issue directing respondent juvenile court to (1) vacate its orders terminating petitioner's reunification services and scheduling a section 366.26 hearing, and (2) hold a new review hearing and reconsider returning the minor C.G. to mother's custody and any necessary transitional services. The juvenile court may consider new evidence or changed circumstances that may have occurred during the

17

pendency of this appeal.  The stay issued by this court is vacated.  The decision is final forthwith as to this court.  (Cal. Rules of Court, rule 8.490(b).)



                                                            _____/s/_____
                                                            Duarte, J.


We concur:


_____/s/_____
Mauro, Acting P.J.



_____/s/_____
Earl, J.